OPINION OF THE COURT
Myron E. Tillman, J.
This is an appeal to this court from judgment and sentence made and entered by the Hon. Charles J. Cooley, Town Justice, Town of Geneva, which judgment convicted the defendant of the crime of driving while intoxicated in violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law following a jury verdict of guilty and which sentence resulted *892 in the revocation of the defendant’s operating license, a fine in the sum of $100, and the imposition of a three-year term of probation.
The defendant was involved in a motor vehicle accident on New York State Route 14 south of the City of Geneva near the intersection of Route 14 and Billsboro Road on July 9, 1977 at approximately 12:30 a.m. The evidence at the trial showed that the defendant was driving northbound on State Route 14 and immediately prior to this accident was occupying the southbound lane going in a northerly direction. His car came into contact with a motor vehicle operated by one Robert Torbitt who was driving in a southerly direction with several passengers. The defendant received a head and elbow injury and complained of chest and back pains. He was treated and admitted to Geneva General Hospital. The passengers in the Torbitt vehicle were treated for minor injuries. The defendant was held in the police vehicle at the scene of the accident for a period of time during which time he was read the commissioner’s warnings specified in subdivision 4 of section 1194 of the Vehicle and Traffic Law. On each occasion the defendant responded by saying he didn’t know what a chemical test was. After transfer to the hospital by the police, the defendant was again read the commissioner’s warnings and he again responded that he didn’t know what a chemical test was. He was not given what is commonly referred to as "the Miranda warning”. After the defendant was admitted to the hospital, the arresting officer left two uniform traffic tickets with the hospital nurse, charging the defendant with driving while intoxicated and failure to yield the right of way. These tickets were given to the defendant the next morning by a hospital nurse. A trial was subsequently held on these charges in Justice Court, Town of Geneva, on the 18th day of October, 1978.
The defendant argues that he was deprived of a fair trial and due process because the trial commenced at 6:30 p.m. and continued with several recesses until a verdict was returned at 3:30 a.m.
The record shows that, at the request of the defense, the court inquired of the jury before summation whether they wished to continue or adjourn. In addition, when the attorney for the defense made this request, he went on to say "if they [the jury] want to continue, I would be glad to continue”.
The defense waived any argument of a fair trial on these *893 grounds. The question was submitted to the jury at the request of the defense. Following submission, the defense said it had no objection, and indeed raised no objection after the jury indicated they wished to continue (People v Passero, 78 Misc 2d 548, 551).
The record does not indicate there was lacking the degree of serenity and calmness necessary in a judicial proceeding to assure both the accused and the People alike a fair and impartial trial in fact and law (People v Murphy, 42 Misc 2d 413).
During the trial, the court below allowed, over objection, testimony from nurse Carol Preston, who assisted in the treatment of the defendant in the emergency room at the Geneva Hospital.
CPLR 4504 makes privileged communication between a physician and his patient, and extends this privilege to professional nurses.
In People v Singer (236 NYS2d 1012) the privilege was held to apply where the physician was allowed to testify concerning the defendant’s physical condition, mental state and responses. Here, too, the nurse gave similar testimony under direct examination by the People, and when testifying as to whether she smelled alcohol she affirmed that she did so when taking the defendant’s blood pressure. She was questioned by the People as to the method used for taking the blood pressure. In addition, she testified on direct examination about his complaining of backache and her observation of a cut on his elbow and the fact that he was conscious during this time.
It is clear from the transcript that the People tried to avoid violating the nurse/patient privilege. Despite these efforts, they came very close to doing so. However, it is not necessary for the court to rule on that aspect of the case for reasons that will be clear in subsequent paragraphs.
Subdivision 4 of section 1194 of the Vehicle and Traffic Law provides that in the event of a defendant’s refusal to submit to a chemical test, evidence of such refusal is admissible against him at a subsequent trial based upon an alleged violation of section 1192 of the Vehicle and Traffic Law.
The refusal in the instant case was established by the testimony, under objection, of a police officer introducing the testimonial statements of the defendant. These statements at no time involved an outright refusal to take the test, and so of *894 necessity, had. to be conclusionary on the part of the police officer and the jury. It is not disputed that the defendant was given the commissioner’s warnings, as required by the Vehicle and Traffic Law and was otherwise treated professionally and courteously by the police.
Defendant was confined in a police car under custodial type circumstances. He was later transferred to the hospital, accompanied by the police officers, and was subsequently admitted to the hospital. The arresting officer handed the hospital nurse two uniform traffic tickets and these tickets were given to the defendant the following morning by a nurse.
The conditions throughout this time were custodial in nature and in fact. The defendant was read the commissioner’s warnings both in the police car and in the hospital. He was not at any time given the Miranda warnings (Miranda v Arizona, 384 US 436). He at no time refused, in so many words, to take the chemical test and so the police officer had to be closely examined in court to establish exactly what the defendant said in order that a conclusion could be drawn that what he said amounted to a refusal. The court must assume that this was a fact obviously decided by the jury based upon the evidence and testimony during the trial.
All of this carries with it an undeniable inference of guilt. The use of his statements against him at trial, as authorized by the statute, constitutes a flagrant violation of the privilege against self incrimination in this fact situation. Since defendant did not submit to the test, the conclusion of refusal was introduced by the prosecution to create the inference that, had he in fact taken it, the result would have been unfavorable to him. The statute permits evidence of oral statements to be substituted for evidence ofi the missing test result. In this instance, the statute operates contrary to the basic rule of criminal justice that a defendant may stand mute and put the State to the obligation of proving his guilt.
The People argue that the explanations and warnings given by the arresting officers to the defendant in this case covering the taking of the chemical test and the defendant’s responses were not the type of custodial interrogation contemplated by the Miranda decision (supra) and that, therefore, "the Miranda warnings” were not required.
This is an unduly restricted view of the custodial circumstances envisaged by Miranda. The commissioner’s warnings may be sufficient for the civil purposes of depriving the *895 defendant of his operator’s license. We will not here go into the arguments concerning the State’s right to withhold such a "privilege”. The commissioner’s warnings were not, however, adequate to satisfy the stricter constitutional requirements for criminal jurisprudence. Had they been given, one wonders if this defendant had a right to remain silent without penalty.
This court believes that the administration of justice would be better served if the police, when faced with similar circumstances to those of the instant case, were to give to the accused "the Miranda warnings”. Certainly conviction could mean incarceration and all the other penalties associated with felonious crime.
The People argue that there is no constitutional right to refuse to submit to a chemical test (Schmerber v California, 384 US 757).
The Schmerber opinion discussed at some length the protection of the Fifth Amendment privilege as it applies to responses of an accused as a result of compulsion. The opinion stated (p 764) that while a distinction of real or physical evidence "is a helpful framework for analysis, we are not to be understood to agree with past applications in all instances”. The court went on to distinguish a lie detector test, which, by measuring bodily functions at the time of interrogation may elicit "responses which are essentially testimonial”. The opinion was careful to point out (p 765) that in that particular case "Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved * * * Petitioner’s testimonial capacities were in no way implicated”.
The verbal responses of the defendant in the instant case could be no less testimonial than the reactions hypothesized in the Supreme Court’s hypothetical lie detector test.
Much emphasis has been placed in the various cases on the fact that because the court in Schmerber said that there is no constitutional right or privilege to prevent a State from compelling a person, suspected of driving while intoxicated, to submit to a blood test. It follows there is no prohibition to prevent comment upon the accused’s refusal to take the test. This court, with all due respect, is of the opinion that this represents circular logic. The one idea does not logically follow a natural or chronological sequence demanded by the other. The test, if conducted, may have many uses for the investigatory function of the police and be of considerable assistance to them in making their determinations as to the charges to be *896 made against an accused. However, the constitutional protection afforded everyone, of being innocent until proved guilty; the right to stand mute and put the State to the burden of proving the guilt of an accused, must not be violated by the introduction of the accused’s refusal to take the test.
The desire of the Legislature to remove drunken drivers from the roads of this State is a very laudable one, and supported wholeheartedly by this court, but this must not be achieved at the expense of that wider philosophical and fundamental right given an accused by both the Federal and State Constitutions.
Last year the Court of Appeals reaffirmed a recognized dictum "A defendant in a criminal case has the right, granted by both the Federal and State Constitutions, to refuse to incriminate himself * * * The point of the cases is that a defendant’s exercise of his constitutional right may not be used against him by the prosecution * * * The only apparent purpose of informing the jury that the defendant had elected to remain silent during police interrogation is to permit them to infer consciousness of guilt [citations omitted]” (People v Von Werne, 41 NY2d 584, 588; emphasis added).
The Appellate Term ruled that "the statute [Vehicle and Traffic Law, § 1194, subd 4] insofar as it permits evidence of refusal to take the prescribed test, violates a defendant’s constitutional privilege from being compelled to testify against himself and from being compelled to provide the State with evidence of a testimonial nature” (People v Thomas, 92 Misc 2d 992, 994-995).
It is therefore concluded that the testimonial evidence presented was inadmissible as violating the defendant’s privilege under the self incrimination clauses of both the Federal and State Constitutions.
There is sufficient reason to believe that defendant’s conviction for driving while intoxicated was based in large part upon evidence of his refusal to submit to a chemical test.
In view of the testimony regarding the injuries sustained by the defendant and the fact that he was admitted to the hospital overnight, there is a sufficient element of doubt as to whether the jury would have rendered the same verdict absent the refusal testimony which compels him to provide incriminating evidence by inference. There may be many reasons, either religious or physical, why a particular individ *897 ual is reluctant to have his blood drawn from his body by a chemical test.
Therefore the infringement of his constitutional guarantee against self incrimination was not harmless beyond a reasonable doubt. (People v Almestica, 42 NY2d 222, 226; People v Crimmins, 36 NY2d 230, 237.)
Defendant’s conviction should be set aside and a new trial granted.