**Dennis Michael McCAMBRIDGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 1086–85.

Court of Criminal Appeals of Texas, En Banc.

May 14, 1986.

**500**

J. Gary Trichter, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and James C. Brough and Jon Munier, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted on a plea of guilty of the offense of driving while intoxicated. Punishment was assessed at six months confinement in jail and a $200.00 fine, probated for two years. The First Court of Appeals affirmed the conviction, holding that the trial court properly denied appellant's motion to suppress the results of his intoxilyzer test. *McCambridge v. State*, 698 S.W.2d 390, (Tex.App.—Houston

[1st] 1985). We granted appellant's petition for discretionary review to decide 1) whether appellant had a right to counsel [1] before deciding to provide a breath sample for an intoxilyzer test, and 2) whether the State's use of appellant's breath sample, obtained after appellant responded to *Miranda* warnings with a request for counsel, violated the prophylactic safeguards established by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[2] We remand.

Appellant was arrested on May 21, 1984, at approximately 11 p.m., by two Houston police officers for suspicion of driving while intoxicated. At the scene of his arrest, appellant requested an attorney. The arresting officers told appellant he would have to wait until he was downtown before receiving the aid of an attorney. Appellant was then transported to the Houston Police Department and taken to a videotaping room. See V.A.C.S., art. 6701*l*–1 note, (Supp.1986). Videotaping began, and appellant was given *Miranda* warnings in the presence of three police officers. Appellant responded by stating that he wanted to consult with his attorney. Appellant was given an opportunity to contact an attorney by telephone. However, his attempt was unsuccessful.[3]

After appellant completed his phone call, the police officers resumed questioning appellant. Appellant again requested that an attorney be present. The officers granted appellant another opportunity to contact an attorney. Appellant attempted to re-call

---

1. Mirroring his first ground of error before the Court of Appeals, appellant relies upon the following sources for his right to counsel: 1) the right to counsel clauses of federal and state constitutions, U.S. Const. amend VI, Tex.Const. art. I, § 10, 2) the Due Process Clause, U.S. Const. amend XIV, and 3) the Due Course of Law Clause, Tex.Const. art. I, § 19.

2. Appellant, in a footnote to his brief, also argues in passing that Texas statutory law codifies *Miranda* warning requirements and provides greater protection than *Miranda v. Arizona*, supra. Appellant cites Articles 1.02, 1.05, & 15.17, V.A.C.C.P. See also Art. 38.22, V.A.C.C.P. How-

ever, we did not grant review on the basis of statutory *Miranda* warning requirements. Our grant of review was strictly limited to the application of *Miranda v. Arizona*, supra, and *Edwards v. Arizona*, supra, to the instant case.

3. Houston police officers were present throughout appellant's telephone conversation. Appellant contacted his wife and named two attorneys for her to contact, hoping that one of the attorneys could refer her to a local criminal attorney in Houston who could be retained by appellant. However, appellant was not allowed to provide his wife with a callback number.

his wife, but the line was busy. An officer then resumed questioning appellant. Appellant again asked for an attorney, but the questioning continued. Appellant requested counsel seven more times, but questioning continued.[4]

Upon appellant's eleventh request for an attorney, the officers abruptly concluded the videotaping of appellant and took appellant outside the videotaping room and into the hallway. While in the hallway, appellant was asked repeatedly whether he would provide a breath sample to determine alcohol concentration. See V.A.C.S., art. 6701*l*–5, § 1 (Supp.1986). Appellant continued to request an attorney. After five to ten minutes, appellant agreed to provide a breath sample for use in an intoxilyzer test.

Prior to taking a breath sample from appellant, an intoxilyzer operator advised appellant of the required statutory breath test warnings.[5] Appellant again agreed to provide a breath sample, stating to the intoxilyzer operator that "he would then take the test because of the [concern over losing his] driver's license."[6] On May 22,

1984, at 2:24 a.m., a complaint and an information were filed against appellant, charging him with driving while intoxicated. See Arts. 2.04 & 2.05, V.A.C.C.P.

Before trial, appellant sought to suppress the videotape of his arrest and the results of the breath test. At the conclusion of the hearing on appellant's motion to suppress, the trial court suppressed the audio portion of the videotape. The trial court overruled appellant's motion to suppress as it applied to the remainder of the videotape and the results of the intoxilyzer test. Appellant then pled guilty with the agreement that he could appeal the trial court's order.[7] See Art. 44.02, V.A.C.C.P.; *Morgan v. State*, 688 S.W.2d 504 (Tex.Cr. App.1985).

### I. Right to Counsel

Relying upon three Supreme Court cases,[8] the Court of Appeals overruled appellant's first ground of error, in which appellant argued that he had a right to counsel before deciding whether to provide a breath sample for an intoxilyzer test. *McCambridge*, supra, at 394.[9] Although

---

4. During the hearing on his motion to suppress, appellant testified repeatedly, "They continued to question me." Nothing in the record indicates the *content* of that questioning. The record does not include the videotape of appellant being questioned.

5. Article 6701*l*–5, § 2(b), supra, in pertinent part, provides:

   Before requesting a person to give a specimen, the officer shall inform the person orally and in writing that if the person refuses to give the specimen, that refusal may be admissible in a subsequent prosecution, and that the person's license, permit, or privilege to operate a motor vehicle will be automatically suspended for 90 days after the date of adjournment of the hearing provided for in Subsection (f) of this section, whether or not the person is subsequently prosecuted as a result of the arrest.... The officer shall inform the person that the person has a right to a hearing on suspension ... if, not later than the 20th day after the date on which the notice of suspension ... is received, the department receives a written demand that the hearing be held.

6. Appellant, in his brief, argues that he eventually agreed to provide a breath sample only because of continuous pressure applied by police officers. The trial court denied appellant's mo-

tion to suppress the test on that basis. The Court of Appeals overruled appellant's ground of error on the voluntariness of his consent. *McCambridge*, supra, at 394–95. We denied review on that same issue.

7. Although the record does not reflect what evidence could have been used to convict appellant, appellant agreed to plead guilty only if the results of the intoxilyzer test were not suppressed. Presumably, the result of the test was sufficient to convict appellant of driving while intoxicated. See V.A.C.S., art. 6701*l*–1(a)(2)(B) (Supp.1986). Nothing in the record indicates that the videotape contained evidence of appellant's guilt. See n. 4, *ante*, at 2.

8. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

9. In its opinion, the Court of Appeals discussed and overruled grounds of error one and three together, *id.*, despite the distinctly separate constitutional theories argued in each ground of error. See grounds of review one and two, respectively, *ante*, at 500 & n. 1. Although such a consolidated discussion makes it difficult to

the Court of Appeals did not explicitly state that it was only addressing a particular federal constitutional provision, given the court's reliance on the above Supreme Court opinions, it is clear that the decision to affirm was grounded upon appellant's argument that he had a Sixth Amendment right to counsel.[10] Appellant's remaining federal and state constitutional arguments claiming a right to counsel were left unaddressed.

This Court recently held that the right to counsel under the Sixth Amendment attaches only upon or after formal initiation of judicial proceedings. *Forte v. State*, 707 S.W.2d 89, 91 (Tex.Cr.App.1986). Therefore, our determination in the instant case whether the Court of Appeals correctly decided that appellant was not denied his Sixth Amendment right to counsel only depends upon when formal adversary proceedings were initiated. *Id.*[11]

■ Appellant was arrested at approximately 11 p.m. on May 21, 1984. Appellant then provided the police with a breath sample *prior* to a complaint and an information being filed at 2:42 a.m. on May 22, 1984, thus charging appellant with driving while intoxicated. Appellant's Sixth Amendment right to counsel did not attach until the complaint and information were filed. See *Forte*, supra, at 92. Therefore, we find no denial of appellant's Sixth Amendment right to counsel.

As we noted earlier, appellant also argued to the Court of Appeals that his right to counsel was denied under the "right to counsel" provision of the state constitution, Tex. Const. art. I, § 10, the Due Process Clause, U.S. Const. amend. XIV, and the Due Course of Law Clause, Tex. Const. art. I, § 19.[12] In his supplemental brief, appellant requests that we decide the instant case on the basis of independent state con-

---

determine the exact reason for affirmance, the opinion is sufficiently clear for this Court to rely upon.

In the future, for issues relying upon disjunctive federal and state authority, appellate courts should be careful to address each ground of error separately and clearly indicate the reason for the outcome. This practice has become even more necessary in light of the recent focus upon state, rather than federal, constitutional authority. See S. Abrahamson, *Criminal Law and State Constitutions: The Emergence of State Constitutional Law*, 63 Tex.L.Rev. 1141 (1985); Comment, *Individual Rights and State Constitutional Interpretations: Putting First Things First*, 37 Baylor L.Rev. 493 (1985). See also *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983) (Supreme Court will undertake review of state court decision unless "state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent [state] grounds....").

In his brief before the Court of Appeals and this Court, appellant provided several constitutional bases for each ground of error and review. Attorneys, when briefing constitutional questions, should carefully separate federal and state issues into separate grounds and provide substantive analysis or argument on each separate ground. If sufficient distinction between state and federal constitutional grounds is not provided by counsel, this Court may overrule the ground as multifarious. Art. 40.09(9), V.A. C.C.P.; *Brooks v. State*, 642 S.W.2d 791, 793 (Tex.Cr.App.1982) ("By combining more than one contention in a single ground an appellant

risks rejection on the ground for presenting nothing for review.") But see art. 44.33, r. 306(d), V.A.C.C.P., and cf. *State v. Jewett*, 500 A.2d 233 (Vt.1985) (appellate courts may require supplemental briefs if state constitutional issue not sufficiently developed).

10. "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S.Const. amend VI.

11. The Court of Appeals held that appellant's decision to provide a breath sample did not constitute a "critical" stage, thus not triggering a right to counsel. *McCambridge*, supra, at 394. We disagree with that holding insofar as it implies that a "critical" stage may arise prior to initiation of formal adversary proceedings. See *Forte*, supra, at 92 ("critical" stage analysis *only arises after formal initiation of adversary proceedings*), and cases cited therein.

(All emphasis is supplied by the author of this opinion unless otherwise indicated.)

12. In an amicus brief to this Court, the National Association of Criminal Defense Attorneys also argues that state and federal law give a defendant the right to counsel "at a time no later than when the arresting officers requests the DWI suspect to submit to a chemical test of his blood, breath, or urine." In a second amicus brief to this Court, the Texas Trial Lawyers Association argues that due process requires that a defendant be given access to counsel prior to sobriety testing.

stitutional authority. We decline to do so at this point because the Court of Appeals affirmed appellant's conviction only on the basis that his Sixth Amendment right to counsel was not denied. Therefore, in order to give the Court of Appeals an opportunity to address all of appellant's constitutional arguments before this Court decides such an important question of state law, we will remand the case for consideration of appellant's remaining state and federal constitutional arguments in his first ground of error. See generally *Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Cr. App.1984). However, we must first determine whether appellant's remaining ground of review, based on a *Miranda* violation, has merit.

II. Violation of *Miranda* and *Edwards*.

The Court of Appeals overruled appellant's third ground of error, which claimed that police officers violated the prophylactic safeguards of *Miranda v. Arizona*, supra, and *Edwards v. Arizona*, supra, by continuing to ask appellant for a breath sample despite his request for counsel. In holding that no violation had occurred, the Court of Appeals relied upon, inter alia, *Schmerber v. California*, supra, and *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

In *Schmerber v. California*, supra, a blood sample was extracted from a defendant by a physician without the defendant's consent. The defendant claimed that his Fifth Amendment privilege against self-incrimination was violated.[13] The Supreme Court first noted that, generally, "the privilege is a bar against compelling 'communications' or 'testimony,' but ... compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." *Id.*, 384 U.S. at 764, 86 S.Ct. at 1832. The Court then held that neither the extraction of blood nor the subsequent chemical analysis of the blood for alcohol concentration required appellant to *testimonially incriminate* himself in violation of the Fifth Amendment. 384 U.S. at 765, 86 S.Ct. at 1833. In its holding, the Court acknowledged that the defendant was compelled to provide a sample of his blood. *Id.* However, the Court held that the Fifth Amendment privilege against self-incrimination does not protect all types of compulsion—only compulsion directed at producing evidence from a defendant's own mouth. *Id.* That Court did not address whether the *Miranda* warning requirement was affected by the absence of a Fifth Amendment privilege against self-incrimination.

This Court has subsequently analogized the extraction of blood in *Schmerber v. California*, supra, to the collection of a breath sample. *Rodriguez v. State*, 631 S.W.2d 515, 517 (Tex.Cr.App.1982). In doing so, we held that providing a breath sample for chemical analysis of alcohol concentration is not a testimonial communication protected by the privilege against self-incrimination under the Fifth Amendment. *Id.* In the absence of any need to protect a defendant's privilege against self-incrimination, we further held that police officers are not required to give a suspect *Miranda* warnings prior to asking him to provide a breath sample. *Id.*

In *South Dakota v. Neville*, supra, a defendant's refusal to participate in a blood-alcohol test was used as substantive evidence against him at his trial. The defendant argued, inter alia, that the use of the refusal against him at his trial violated his Fifth Amendment privilege against self-incrimination. The Supreme Court avoided the notion that Neville's refusal was a physical act rather than a testimonial act, *id.*, 459 U.S. at 561–62, 103 S.Ct. at 921–22, relying instead on the freedom of the defendant to refuse the test,[14] and held that his choice of refusal was "not an act coerced by the officer, and thus is not protected by the privilege against self-in-

---

13. "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend V.

14. Texas law gives a suspect a similar choice. V.A.C.S., arts. 6701*l*–5, §§ 1–2 (Supp.1986). See *Forte*, supra, at 91, n. 2.

crimination." *Id.*, 459 U.S. at 564, 103 S.Ct. at 923.

In *South Dakota v. Neville,* the Court also decided whether *Miranda* protections extended to a defendant's decision whether to provide a blood sample for chemical analysis. The Court stated:

In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.* As we stated in *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980), police words or actions "normally attendant to arrest and custody" do not constitute interrogation. The police inquiry here is highly regulated by state law, and is presented in virtually the same words to all suspects.[15] It is similar to a police request to submit to fingerprinting or photography. Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection. See generally Arenella, *Schmerber* and the Privilege Against Self-Incrimination: A Reappraisal, 20 Am.Crim.L.Rev. 31, 56–58 (1982).

*South Dakota v. Neville,* 459 U.S., at 564, n. 15, 103 S.Ct., at 923, n. 15. Thus, a defendant, when faced with a decision whether to provide a breath or blood sample for chemical analysis of alcohol concentration, see V.A.C.S., art. 6701*l*–5, § 1, may not avoid making a decision by invoking the protection of the Fifth Amendment privilege against self-incrimination or the prophylactic safeguards of *Miranda.*[16]

Appellant, in his petition for discretionary review, acknowledges that *Miranda* warnings are not required before police may ask a suspect to provide a breath sample. In fact, appellant concedes that he never intended to argue to the Court of Appeals that *Miranda* warnings were required. Instead, appellant argues that the right to counsel under *Miranda,* though not initially required, must be applied in the instant case because the police *did* inform appellant that he had a right to have counsel present during "questioning." In appellant's words, "[i]t is one thing to not require the warnings be given by police because the chemical test does not equate to testimonial communication, but it is an entirely different matter where the warnings *are* given by police, then invoked by a defendant and thereafter deliberately ignored by police" (emphasis supplied by appellant). We disagree.

The Supreme Court recently reviewed the basis for its decision in *Miranda v. Arizona:*

In *Miranda v. Arizona,* the Court recognized that custodial interrogations, by their very nature, generate "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S., at 467 [86 S.Ct. at 1624]. To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealing with the accused. In particular, prior to the initiation of questioning, they must fully apprise the

---

**15.** Texas law requires that police give specific warnings. V.A.C.S., art. 6701*l*–5, § 2(b)–(e).

**16.** We do not imply that the breath testing decision is free from all constitutional or statutory protection.

"... [D]ue process concerns could be involved if the police initiated physical violence while administering the test, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force." *South Dakota v. Neville,* 459 U.S., at 559, n. 9, 103 S.Ct., at 920, n. 9, citing *Schmerber v. California,* 384 U.S. 757, 761, n. 4,

86 S.Ct. 1826, 1830, n. 4, 16 L.Ed.2d 908, 914, n. 4 (1966). However, appellant has not argued that his submission to an intoxilyzer test raised due process concerns of this nature. Nor have we accepted review on that issue.

State law also requires that a suspect's refusal to provide a breath sample be strictly honored. V.A.C.S., art. 6701*l*–5, § 2(a), (Supp.1986); *Turpin v. State,* 606 S.W.2d 907, 913–914 (Tex.Cr. App.1980). However, the issue of the voluntariness of appellant's consent also is not before us in the instant case. See n. 7, *ante,* at 501.

suspect of the state's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to "have counsel present ... if [he] so desires." *Id.*, at 468–470 [86 S.Ct. at 1624–1626]. Beyond this duty to inform, *Miranda* requires that the police respect the accused's decision to exercise the rights outlined in the warnings. "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, [or if he] states that he wants an attorney, the interrogation must cease." *Miranda*, 384 U.S., at 473–474 [86 S.Ct. at 1627]. See also *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

*Moran v. Burbine*, —— U.S. ——, ——, 106 S.Ct. 1135, 1140–1141, 89 L.Ed.2d 410 (1986).

The Supreme Court also recently reviewed the basis for its decision in *Edwards v. Arizona:*

In *Edwards v. Arizona*, 451 U.S. 477 [101 S.Ct. 1880, 68 L.Ed.2d 378] (1981), we held that an accused person in custody who has "expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.*, at 484–485 [101 S.Ct. at 1884–1885]. In *Solem v. Stumes*, 465 U.S. 638 [104 S.Ct. 1338, 79 L.Ed.2d 579] (1984), we reiterated that "*Edwards* established a bright-line rule to safeguard pre-existing rights," *id.*, at 646 [104 S.Ct. at 1343][;] "once a suspect has invoked the right to counsel, any subsequent conversation must be initiated by him." *Id.*, at 641 [104 S.Ct. at 1340].

*Michigan v. Jackson*, —— U.S. ——, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

In summarizing the rationales of *Miranda v. Arizona*, supra, and *Edwards v. Arizona*, supra, the Supreme Court has continued to emphasize that *Miranda* protections are aimed at dissipating the inherently coercive atmosphere associated with custodial interrogations. *Miranda* warnings inform a suspect of the procedural tools available to him in the face of coercive interrogation. One of those tools is the right to request a lawyer, thus allowing a defendant to end the interrogation or guarantee the assistance of a third party. Therefore, "[t]he Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation." *Edwards v. Arizona*, 451 U.S., at 486, 101 S.Ct., at 1885.

■ In the instant case, police officers complied with the requirements of *Miranda v. Arizona*, supra, and *Edwards v. Arizona*, supra. The trial court did suppress the audio portion of the videotape, finding that the police officers continued to "question" appellant after he invoked his right to counsel. However, there is nothing in the record to indicate that the continued questioning of appellant constituted "interrogation" within the meaning of *Miranda* or that the questions resulted in any incriminating response by appellant. The only evidence of the content of that questioning came from appellant during the hearing on his motion to suppress. Appellant testified, "They continued to question me." Although the videotape of police officers questioning appellant might provide more revealing evidence of the nature of the questioning, it has not been included in the record on appeal. We are bound by the record on appeal as presented to us. *Evans v. State*, 622 S.W.2d 866 (Tex.Cr.App. 1981). Given the record presented to this Court, appellant has not shown that he was ever interrogated within the meaning of *Miranda*. Questioning "normally attendant to arrest and custody" is not interrogation. *Rhode Island v. Innis*, supra. Therefore, there is no evidence in the record to support the conclusion that the police officers ignored appellant's right to have counsel present for custodial interrogation.

We acknowledge that the legal distinction between questioning that amounts to interrogation and questioning that is "nor-

mally attendant to arrest and custody" may not always be readily apparent. See *Rhode Island v. Innis*, supra; *Paez v. State*, 681 S.W.2d 34, 36 (Tex.Cr.App.1984). In an arrest for driving while intoxicated, police may create some additional confusion by giving *Miranda* warnings without informing a defendant that those warnings do not apply to his decision whether to provide a breath sample. However, given the instant facts, the remedy for such confusion cannot be found in *Miranda* or *Edwards*.[17]

Appellant argues that, even if *Miranda* warnings do not presently provide protection under the instant circumstances, the prophylactic safeguards of *Miranda* and *Edwards* should be extended to prevent a suspect's confusion in a breath test situation. Specifically, appellant argues that *Edwards v. Arizona*, supra, should be extended to require that police cease questioning a suspect on any subject, whether such questioning constitutes "technical" interrogation or not, once the suspect has requested counsel following *Miranda* warnings. We disagree.

The Supreme Court was recently asked to extend *Miranda* protections to require police to inform a suspect of an attorney's efforts to reach him during custodial interrogation. The Court, in rejecting an extension, struck at the very heart of appellant's instant contention:

> ... [R]eading *Miranda* to forbid police deception of an *attorney* "would cut [the decision] completely loose from its own explicitly stated rationale." *Beckwith v. United States*, 425 U.S. 341, 345 [96 S.Ct. 1612, 1615, 48 L.Ed.2d 1] (1976). As is now well established, "[t]he ... *Miranda* warnings are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the [suspect's] right against compulsory self-incrimination [is] protected.'" *New York*

*v. Quarles*, 467 U.S. 649, 654 [104 S.Ct. 2626, 2631, 81 L.Ed.2d 550] (1984), quoting *Michigan v. Tucker*, 417 U.S. 433, 444 [94 S.Ct. 2357, 2364, 41 L.Ed.2d 182] (1974). Their objective is not to mold police conduct for its own sake. Nothing in the Constitution vests in us the authority to mandate a code of behavior for state officials wholly unconnected to any federal right or privilege. The purpose of the *Miranda* warnings instead is to dissipate the compulsion inherent in custodial interrogation and, in doing so, guard against abridgement of the suspect's Fifth Amendment rights. Clearly, a rule that focuses on how the police treat an attorney—conduct that has no relevance at all to the degree of compulsion experienced by the defendant during interrogation—would ignore both *Miranda*'s mission and its only source of legitimacy.

*Moran v. Burbine*, —— U.S., at ——, 106 S.Ct. at 1143.

In the instant case, reading *Edwards v. Arizona*, supra, to forbid police from seeking a suspect's breath sample, once the suspect has invoked his right to counsel under *Miranda*, would similarly divorce *Miranda* from its "only source of legitimacy." Not only does the breath testing decision not involve custodial interrogation, it also does not involve the privilege against self-incrimination. A rule that focuses on preventing collection of a breath sample, merely because a defendant has been informed of his right to have counsel present if he is interrogated, would severely restrict police officers in the pursuit of lawfully collecting evidence of intoxication and, more significantly, do nothing to further protect the privilege against self-incrimination. Therefore, we find that appellant, under the instant facts, has no remedy

---

**17.** A different question might be presented if the police officer, in ignoring appellant's request for counsel under *Miranda*, had mixed his request for a breath sample with questions that amounted to interrogation. In the absence of such a probable *Miranda* violation, we need not decide under what circumstances a suspect's consent to provide a breath sample is the fruit of an illegal interrogation.

under *Miranda v. Arizona,* supra, or *Edwards v. Arizona,* supra.[18]

The judgment of the Court of Appeals is vacated and the cause is remanded to the Court of Appeals for further consideration of appellant's ground of error claiming a right to counsel under the Fourteenth Amendment to the United States Constitution and Article I, §§ 10 and 19 of the Texas Constitution.

ONION, P.J., and CLINTON, J., concur in result.

TEAGUE, Judge, dissenting.

This Court granted the appellant's petition for discretionary review to review two of the three grounds of review he presented therein, namely: "(1) The trial court and the First Court of Appeals erred in not suppressing appellant's intoxilyzer breath test result as it was derived in violation of his right to assistance of counsel," *and* "(2) The trial court and the First Court of Appeals erred in not suppressing appellant's intoxilyzer breath test result as it was derived after appellant requested counsel and in violation of the prophylactic safeguard *established* by *Miranda v. Arizona,* [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], and *Edwards v. Arizona,* [451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)], requiring police to cease all interrogation where a person in custody requests counsel." (My emphasis.)

I dissent first to footnote 2 of the majority opinion, which states the following: "Our grant of review was strictly limited to the *application* of *Miranda v. Arizona,* supra, and *Edwards v. Arizona,* supra, to the instant case." (My emphasis.) Our grant of review did no such thing.

After reading the majority opinion, it appears to me that the new rule is that after this Court has granted a petition for discretionary review, it is now necessary for the appealing party to prepare for this Court a proposed opinion, and this Court will be bound by the four corners doctrine in deciding whether to approve or disapprove the opinion. I must confess: I am unfamiliar with any such doctrine. In light of what this Court has been doing of late, see *post,* it would appear that after granting a petition for discretionary review, we should now take a vote on whether a majority of this Court believes that the opinion by the court of appeals could be better written and, if a majority of this Court decides it could, then we simply remand the cause back to the court of appeals for it to rewrite its opinion. That is basically what is happening today.

Today, as members of law enforcement, the Bench and Bar of this State anxiously await our decision on whether an accused, who has been arrested for driving while intoxicated, has a limited statutory or constitutional right to counsel before deciding whether to submit to an intoxilyzer test, but as we erroneously did on April 9, 1986, when we remanded the cause of *Forte v. State,* 707 S.W. 89 (Tex.Cr.App., 1986), to the Fort Worth Court of Appeals, we once again pussyfoot around by remanding this cause to the Houston First Court of Appeals, in order for it to do what it has already done, implicitly if not expressly. This is neither judicial efficiency nor judicial economy at its best.

Come on Brethren, let's quit beating around the bush and decide the issue, whether a person arrested for driving while intoxicated has either a constitutional or statutory limited right to counsel. Just because this Court goofed just a couple of

---

18. In finding appellant has no remedy under *Miranda v. Arizona,* supra, or *Edwards v. Arizona,* supra, we do not imply that a remedy will never be available to a suspect who is confused when faced with *Miranda* warnings and a breath testing decision without the benefit of requested counsel. We are simply limiting our decision in the instant case to the issues and remedy requested by appellant in his petition for review.

The legislature is free to enlarge upon the statutory warnings required at present, thus requiring a police officer to inform a suspect that *Miranda* warnings do not apply to the breath testing decision. See art. 6701*l*–5, § 2(b), supra. However, we believe it would be inappropriate for this Court to make such an expansion of statutory warnings absent legislative authority.

days ago in *Forte v. State,* supra, by remanding that cause to the Fort Worth Court of Appeals for that court to perform a useless task, is no justification why this Court should continue to goof.

The record reflects that Dennis Michael McCambridge, hereinafter referred to as the appellant, appealed the misdemeanor driving while intoxicated conviction he had sustained in the trial court to the Houston First Court of Appeals, which court affirmed his conviction. See *McCambridge v. State,* 698 S.W.2d 390 (Tex.App.—Houston [1st] 1985).

On direct appeal to the Houston First Court of Appeals, the appellant, relying primarily upon *Forte v. State,* supra, as case authority, contended that after he had invoked his right to counsel, and after he had received the *Miranda* warnings, he had the limited right to the assistance of counsel before deciding whether or not to take the intoxilyzer test. He also argued that because he was denied his right to the assistance of counsel the trial judge should have suppressed not only the audio portion of the video tape, which he did, but should have also suppressed the result of the breath test that he took, which he didn't.

The Houston First Court of Appeals, notwithstanding that the appellant relied primarily upon *Forte,* supra, as authority for his contentions, but without discussing *Forte,* supra, totally rejected what the Fort Worth Court of Appeals had held in *Forte,* supra, that an accused arrested for driving while intoxicated has the limited right to the assistance of counsel before deciding whether to take the intoxilyzer test. The Houston Court of Appeals held: "Because the appellant's refusal to take the breath test was not constitutionally protected (under the Sixth Amendment to the Federal Constitution), *and* because this was not a critical stage of the prosecution against the appellant, we hold that he was not entitled to consult an attorney before deciding whether to refuse to take the breath test." (My emphasis.)

I will first address what both this Court and the Fort Worth Court of Appeals stated in *Forte v. State,* supra.

In our *Forte,* supra, this Court stated the following: "Although the opinion of the Court of Appeals does not specifically mention a particular federal or state constitutional provision, given its reliance upon *United States v. Wade,* supra, it is clear that the decision was upon the Sixth Amendment." This is truly a misreading of that court's opinion.

On motion for rehearing, the Fort Worth Court of Appeals, see *Forte v. State,* 686 S.W.2d 744 (Tex.App.—Ft. Worth 1985), clearly pointed out that it was relying upon *Prideaux v. State of Minnesota, Department of Public Safety,* 310 Minn. 405, 247 N.W.2d 385 (Minn.1976), not only for guidance but also for authority. *Prideaux,* supra, had interpreted a statute similar to the one in existence in Texas at the time that the appellant was arrested, but which was no longer in existence in Minnesota at the time the Fort Worth Court of Appeals handed down its opinion on rehearing. See *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512 (Minn.1985). Note what the court of appeals expressly stated in its opinion on rehearing: "Adopting the language of that opinion (*Prideaux,* supra) we hold that any person who is required to submit to a chemical test of the alcohol content of his blood, breath, or urine shall have the right to consult with a lawyer of his own choosing before making that decision, provided that such consultation does not unreasonably delay the administration of the test." (754). Thus, the opinion by the court of appeals, just like *Prideaux,* supra, was not even decided on Federal *or* State constitutional grounds, but, instead, was decided upon State statutory grounds. The court used for guidance and authority an opinion from the Minnesota Supreme Court that had been expressly overruled by that court because of a tremendous change that had been made in the interval by the Minnesota Legislature. However, *Prideaux,* supra, was in point because of the way the Minnesota laws were then worded and the way Texas laws were worded at

the time the defendant Forte had been arrested.

This Court, in *Forte,* supra, erroneously stated the following: "Although the Court of Appeals did not explicitly state that it was only addressing a particular federal constitutional provision, given the court's reliance on the above Supreme Court opinions, it is clear that the decision to affirm was grounded upon appellant's argument that he had a Sixth Amendment right to counsel."

In *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court expressly stated the following: "When ... the adequacy and independence of any possible state law grounds is ... clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did ..." We should adhere to this statement in interpreting opinions by courts of appeals.

Therefore, the Fort Worth Court of Appeals' opinion of *Forte v. State,* supra, should be clear to even the most myopic reader on what basis that court decided the limited right to counsel issue. Likewise, the only thing that the Houston First Court of Appeals forgot to do in its opinion was to put therein, in big, bold letters, the fact that it was relying upon decisions of the Supreme Court of the United States—not only for guidance but for authority, in stating and holding what it did. It either forgot to do that or it simply forgot to turn on the lights, so that some members of this Court could see what it had stated and held.

By taking the action that a majority of this Court votes to take today, to remand this cause to the Houston Court of Appeals, just as it took just a few days ago, to remand *Forte,* supra, to the Fort Worth Court of Appeals, we give meaning, not to the fact that criminal convictions must eventually become final, but to the fact that in Texas appeals of criminal convictions can sometimes closely resemble a ping pong game.

The Houston First Court of Appeals expressly stated in its opinion the following: "In support of this contention (that his motion to suppress should have been granted, because he was deprived of his right to assistance of counsel), appellant cites the recent decision of *Forte v. State,* 686 S.W.2d 744 (Tex.App.—Fort Worth 1985) ..." (P. 392 of opinion.) Thereafter, it stated and held the following: "We decline to follow the majority holding in *Forte v. State* ..."

Therefore, our decision today should be, not to remand this cause to the Houston Court of Appeals, but, instead, to withdraw our opinion in *Forte,* supra, and decide the issue, whether the appellant had the limited right to counsel before deciding whether or not to take the breath test.

The facts of this cause reflect that after being arrested for driving while intoxicated, in response to the appellant's request for counsel, the arresting officers told him that he would have to wait until after he got downtown to the station house before he could receive the aid of an attorney. At the station house, contrary to the express provisions of Art. 15.17, V.A.C.C.P., the appellant was not taken to a magistrate, but, instead, was taken to the videotaping room of the police department. The appellant was then administered the *Miranda* warnings, and was permitted to use a telephone. Because he did not know his Dallas civil attorney's telephone number, he telephoned his wife and told her to call not only his Dallas attorney but also to telephone a friend of his who was an Assistant District Attorney of Harris County, for the purpose of being referred to a local criminal defense attorney. Thereafter, the appellant again tried to telephone his wife, but this time the line was busy. The appellant was never successful in making contact with an attorney while he was at the station house.

The record clearly reflects that at least nine times while in the videotaping room the appellant requested the assistance of counsel, but his request fell on deaf ears. After his tenth request for the assistance

of counsel, the appellant was removed from the videotaping room to the hallway outside of the room, where police officers continued to ask him to submit to a breath test. Eight more times he refused. Finally, after his eighteenth request for the assistance of counsel was not honored, and probably out of desperation and believing that continued refusals would not deter the police officers from their continuing harassment to get him to take the test, as well as by now believing what the officers were telling him, i.e., that an attorney was going to screw up everything that might be done, that he would automatically be found guilty, that he would lose his driver's license, that he would go to jail, and that possibly he would lose his job, he discontinued making demands for counsel and took the intoxilyzer test.

Under our statutory law, the mere refusal to take the breath test carries both civil and criminal penalties. For example, on the criminal side, a defendant's refusal to take the test is now admissible as evidence against him as an inference of guilt in a subsequent criminal prosecution; on the civil side, a refusal to take the test results in an automatic suspension of that person's driver's license for ninety days. See Art. 6701*l* –5, Sections 2(f) and 3(g). Thus, we are not dealing with a simple driver's license revocation case.

What the court of appeals and the parties have overlooked is the fact that the arrested person is guaranteed by the provisions of Art. 15.17, V.A.C.C.P., and Art. 38.22, Section 3, V.A.C.C.P., to be warned of his right to counsel, and if he requests counsel, under this Court's decisions, that request must be honored. Furthermore, the Texas Constitution guarantees that an accused shall not be compelled to give evidence against himself, see Art. I, Section 10, Texas Constitution. Also see *Sanchez v. State,* 707 S.W.2d 575 (Tex.Cr.App., 1986) (Clinton, J., concurring opinion).

This case, like *Forte,* supra, truly exemplifies the continuing difficulties encountered by the police in seeking to satisfy at the same time the requirements of a *Mi-*

*randa* warning and the provisions of the implied consent statute. Simply stated, for law enforcement officials, the two make a bad marriage because they represent contradictory polar interests.

It is unnecessary to decide this case on constitutional grounds. The question really boils down to whether the Legislature of this State intended a blanket denial of the right to counsel under the implied consent statute.

As previously noted, in this State, any person in police custody accused of wrongdoing is entitled to be told that he has the right to consult with an attorney, and, if he requests counsel, his request must be honored. Cf. *Dunn v. State,* 696 S.W.2d 561 (Tex.Cr.App.1985). However, under the implied consent statute, there is no such right.

Thus, under our law, the State is required to both advise the accused of his right to counsel and at the same time tell him he does not have the right to counsel. How confusing this must be to the accused. ("Didn't you tell me earlier I could call my lawyer and I don't have to answer any questions?" "And now you're saying I can't have a lawyer and I gotta take the test?" See Latzer, "The High Court vs. High Drivers: A Short Course in Logic," Vol. 21, No. 1, *Criminal Law Bulletin,* Jan.—Feb., 1985).

In *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court held that when the pretrial investigation reaches a "critical" stage, the right to counsel attaches, and "[T]he accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, *formal or informal,* in court or out, where counsel's absence might derogate from the accused's right to a fair trial." (My emphasis.)

The majority opinion, as it did in *Forte,* supra, interprets *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), as holding that the "critical" stage can never exist unless and until formal charges have been filed against the accused. The facts in *Gouveia,*

supra, reflect that the defendants in that cause, already serving prison sentences, were placed in administrative segregation or detention *after a hearing* because they were suspected of killing other inmates. They were subsequently formally charged with those killings. They claimed that they had the right to the assistance of counsel while they were in administrative "lock up." The Supreme Court held that they were not entitled to counsel while they were in administrative segregation and before any adversarial judicial proceedings had been initiated against them, but expressly pointed out that "The narrow issue before the Court of Appeals and before us today is whether the Sixth Amendment requires the appointment of counsel for indigent inmates *in respondents' situation.*" 104 S.Ct., at 2296, fn. 1. In so holding, the Court, however, was quick to point out that the defendants had visitation privileges and the opportunity to make unmonitored phone calls to attorneys while in administrative segregation, and that in a pretrial situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality," *United States v. Wade*, supra, 388 U.S., at 224, 87 S.Ct., at 1930, the right to counsel may exist. 104 S.Ct., at 2298.

Thus, the unqualified statement that this Court made in *Forte*, supra, that "the Supreme Court concluded (in *Gouveia*, supra,) that the Sixth Amendment right to counsel attaches only upon or after formal initiation of judicial proceedings", given the facts and circumstances of *Gouveia*, supra, is a statement that is a far cry from being one without any qualification, restriction, or limitation. Unquestionably, the majority opinion tries to paint a big wall with a little brush that has little paint in it.

In the majority opinion's meandering type discussion of *Miranda* and *Edwards*, supra, it has overlooked the Supreme Court decision of *Berkemer v. Mc Carty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), in which the Court held that "a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in *Miranda*, regardless

of the nature or severity of the offense of which he is suspected or for which he is arrested." 104 S.Ct., at 3148. The Court further held that "There can be no question that respondent was 'in custody' at least as of the moment he was formally placed under arrest and instructed to get into the police car. Because he was not informed of his constitutional rights at that juncture, respondent's subsequent admissions should not have been used against him." 104 S.Ct., at 3148. Also see *People v. Davie*, 96 Misc.2d 890, 410 N.Y.S.2d 222 (1978); Annot., 31 *A.L.R.3rd* 565 (1970).

In Texas, a defendant's silence or refusal to submit to a requested chemical test is a tacit or overt expression and communication of the defendant's thoughts, and thus protected by the self-incrimination clause of the Texas Constitution. *Dudley v. State*, 548 S.W.2d 706 (Tex.Cr.App.1977).

In this instance, after the appellant, who was then in custody, was informed of his *Miranda* rights he invoked his right to counsel, but the police refused to honor his request to have counsel assist him. The refusal to comply with his request violated the appellant's right to counsel under the Texas statutes. All evidence secured thereafter should have been suppressed. *Juckett v. Evergreen District Court*, 100 Wash.2d 824, 675 P.2d 599 (1984).

It is time for this Court to come to grips with all of the above, and to decide the issues that are now before this Court. Other than to do as was done in this cause, to harass the appellant until he finally agreed to submit to taking the test, police officers who arrest persons for driving while intoxicated are at a loss of just what they should do.

There is a great deal of interplay between the arresting officer giving the accused the *Miranda* warnings and also giving the accused the implied consent warnings. The two are truly paradoxical. Today, unfortunately, a majority of this Court refuses to decide the important issues that are before us. We do a disservice to our

men in blue by not today deciding these issues.

I dissent to remanding this cause to the court of appeals. This only reflects dilly dallying around at its best.