# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00455-CR

**Gary Edward O'Bryan, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TOM GREEN COUNTY
### NO. 99-02778L2, HONORABLE PENNY ANNE ROBERTS, JUDGE PRESIDING

After a jury trial, appellant Gary Edward O'Bryan was convicted for driving while intoxicated. Tex. Penal Code Ann. § 49.04(b) (West Supp. 2001). Appellant elected to have the court assess punishment, which was set at confinement for ninety days in the county jail and a $500.00 fine, with the confinement probated for one year. In three points of error, appellant challenges his conviction. We will affirm.

### Factual and Procedural Background

At approximately 12:30 a.m. on October 1, 1999, off-duty San Angelo police officer Ed Smith was working as the night manager for an apartment complex. He received a page from a tenant, Tracy O'Bryan, who screamed that her estranged husband Gary was trying to break into her apartment. Smith went to the apartment, but no one was at the door. Tracy O'Bryan described the vehicle her husband usually drove as a gold-colored Jeep. Smith went into the apartment parking lot

and saw a Jeep matching that description starting to leave.[1]  Smith had already contacted his backup officer, Steve Dophied, who was working the late-night shift, and radioed him again to ask him to stop the jeep.  Dophied stopped the vehicle as it was exiting the apartment complex and entering the public road.  Dophied testified that appellant attempted to swerve around him; the officer then used his vehicle to block appellant's Jeep and gestured for appellant to return to the parking area so the cars would not block the street.  Dophied said that appellant got out of the car without being asked and identified himself.  Dophied smelled alcohol and thought that appellant's movements were unsteady.  Dophied began administering field sobriety tests.  At that point, Smith arrived and verified that appellant was the person about whom he had been called.  Smith smelled a strong odor of alcohol on appellant's breath and person; appellant's speech was slurred and his eyes were bloodshot and glassy.  When Smith tried to discuss the criminal trespass problem with appellant, he was belligerent and kept telling the officers the names of other officers he knew.  Appellant later told Dophied that Dophied must be a rookie because "only a rookie" would arrest appellant in light of all of the officers he knew.

Dophied testified that he administered a variety of field sobriety tests.  He said appellant smelled of alcohol, swayed while standing, displayed awkward and uncoordinated movements, had slurred speech, and admitted to having four or five beers that evening. Dophied testified about appellant's poor performance on the field sobriety tests.  Dophied concluded that appellant was intoxicated due to alcohol consumption, placed appellant in the police car, and took

---

[1]  Based on his testimony at trial, Smith was attempting to find appellant to deliver to him a criminal trespass warning.  *See* Tex. Penal Code Ann. § 30.05(a) (West Supp. 2001).

him to jail. At the jail, Dophied read appellant the driver's license suspension warning contained in standard form DIC-24. Appellant refused to give a breath specimen. He also refused to sign the DIC-24 indicating his refusal.

Tracy O'Byan testified that at the time she called police she had filed for divorce; however, at the time of trial she had "dropped" the divorce proceeding and was living with appellant. They owned and managed a sports bar together. She said that appellant was not intoxicated on the night in question, but she admitted she only saw him through a peephole and never opened the door so she never smelled his breath. She said that appellant suffered from gout and had difficulty standing; he took medication for the gout but she was unsure of the nature of the medication.

Lonnie Bearden of the San Angelo Police Department also testified in appellant's defense. Bearden said that appellant had gout, it gave him pain, and he had mobility difficulties. Bearden said that in his opinion these conditions might cause someone who was not intoxicated to have difficulty with a field sobriety test. Although he said gout would not affect the horizontal gaze nystagmus field sobriety test, he did not consider that test one hundred percent reliable. Bearden said that he became a friend of appellant through their membership in the Fraternal Order of Eagles. Bearden also testified that in return for a few drinks, he served as a "kind of security" at appellant's bar when he was off duty.

Appellant brings three points of error: the evidence was legally insufficient to support his conviction; the evidence was factually insufficient to support his conviction; and the trial court erred in admitting evidence of appellant's refusal to provide a breath specimen.

3

**Discussion**

*Sufficiency of the Evidence*

In his first two points of error, appellant contends that the evidence was legally and factually insufficient to support his conviction; specifically, he claims that the State failed to establish the element of intoxication beyond a reasonable doubt.

When the court reviews the legal sufficiency of evidence, it does so in the light most favorable to the verdict to determine whether a rational finder of fact could have found all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999). If there is evidence that establishes guilt beyond a reasonable doubt and if the factfinder believes the evidence, the reviewing court is not in a position to reverse the judgment on sufficiency of the evidence grounds. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury as trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of the witnesses, and to determine the weight to be given any particular evidence. *Id.*

When the court reviews the factual sufficiency of the evidence, it puts aside the prism of the "light most favorable to the verdict." *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd untimely filed). The reviewing court considers all the evidence in a neutral light and reverses if the verdict is so contrary to the overwhelming weight of the evidence as to be unjust. *Johnson*, 23 S.W.3d at 7; *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); *Clewis*, 922 S.W.2d at 134. The jury's verdict, however, should still be accorded

4

due deference so that the reviewing court does not, in effect, become the thirteenth juror. *See Clewis*, 922 S.W.2d at 133. The appellate court does not interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility of testimony. Unless the record clearly reveals that a different result was appropriate, an appellate court should defer to the jury's determination concerning what weight to give contradictory testimonial evidence because the resolution of such conflicts often turns on an evaluation of credibility and demeanor by the jury. *See Johnson*, 23 S.W.3d at 8-9.

Appellant argues that the evidence is insufficient because he introduced "uncontroverted evidence" that he suffered from a medical condition, gout, that impaired his mobility and the State failed to prove that the appellant could have passed the field sobriety tests even while in an unintoxicated condition. Appellant appears to be urging that the statutory definition of intoxication[2] should be interpreted as "loss of *his* normal use of his faculties." *See Fogle v. State*, 988 S.W.2d 891, 893-94 (Tex. App.—Fort Worth 1999, pet. ref'd) (rejecting argument that State had to prove defendant's normal use of his faculties; defendant argued that condition was due to organic brain disorder, not alcohol) (citing *Reagan v. State*, 968 S.W.2d 571, 572 (Tex. App.—Texarkana 1998, pet. ref'd); *Massie v. State*, 744 S.W.2d 314, 316 (Tex. App.—Dallas 1988, pet. ref'd)). In accord with *Fogle* and the cases cited therein, we reject appellant's argument that the State first had to establish appellant's normal faculties and then establish whether he possessed normal use of his own faculties at the time in question.

---

[2] "'Intoxicated' means: (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . ." Tex. Penal Code Ann. § 49.01(2)(A) (West Supp. 2001).

5

The jury had before it testimony from appellant's wife and his friend Bearden that appellant suffered from gout and his physical mobility was impaired.[3] Bearden said that in his opinion appellant's gout would affect his performance on some of the field sobriety tests. The jury also had before it the testimony of two police officers as to appellant's signs of intoxication. The jury could have believed that appellant's behavior was explained by a medical condition; it was not compelled to do so, however. The jury could have found the lack of any actual medical evidence as to appellant's condition compelling. Further, the jury could rationally have decided that the wife's and friend's personal relationships with appellant rendered their testimony less credible, a judgment within their province. *Moreno*, 755 S.W.2d at 867. A rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt; the evidence is therefore legally sufficient. *See Jackson*, 443 U.S. at 319. We overrule appellant's first point of error.

We have also reviewed all of the evidence in a neutral light. Appellant's basic argument is that the jury should have believed his witnesses, rather than the State's. The record does not show that any result other than the jury's determination of the weight to give to the contradictory evidence was appropriate. *See Johnson*, 23 S.W.3d at 8. We conclude that the verdict was not so contrary to the overwhelming evidence as to be unjust. *See Johnson*, 23 S.W.3d at 7; *Clewis*, 922 S.W.2d at 134. We overrule appellant's second point of error.

---

[3] We note that in *Fogle*, the defendant introduced testimony from a doctor that he suffered from a brain disorder. 988 S.W.2d at 894. Appellant introduced no medical evidence that he suffered from gout.

*Evidence of Refusal of Breath Test*

In his third point of error, appellant contends that the trial court erred in admitting evidence of his refusal to submit a breath sample. Although appellant acknowledges the Transportation Code allows such an admission,[4] he urges that the manner in which the test was presented to him at the county jail was confusing and violated his rights.

Appellant contends that Dophied led him to believe that he was entitled to consult with his attorney before deciding whether to submit a breath sample. He bases this contention on Dophied's offer to use a telephone that turned out to be malfunctioning. The record as a whole does not support appellant's inference from Dophied's offer, however.

Dophied testified that after he transported appellant to jail, he took appellant to the room used to videotape subjects while the standard DIC-24 form warnings were read and requests for a breath sample made. Appellant kept insisting that he wanted to consult his attorney before deciding whether to take or decline the breath test. Dophied testified that he told appellant several times that appellant did not have that option; if he would not agree to take the test it was the equivalent of a refusal.[5] Appellant kept arguing. When Dophied filled out the warning form,

---

[4] Tex. Transp. Code Ann. § 724.061 (West 1999).

[5] No right to counsel attaches to the decision whether to take a breath test. *See McCambridge v. State*, 712 S.W.2d 499, 506 (Tex. Crim. App. 1986) (decision to take or refuse breath test does not implicate Fifth Amendment); *Rodriguez v. State*, 631 S.W.2d 515, 517 (Tex. Crim. App. 1982) (taking of blood alcohol test not a testimonial communication protected by either the United States or Texas Constitutions). A refusal to take a breath test does not mean that the suspect must explicitly say, "I refuse." For example, drivers have "refused" a breath test for purposes of the implied consent statute by refusing to provide two useable specimens. *Kerr v. Texas Dep't of Pub. Safety*, 973 S.W.2d 732, 736 (Tex. App.—Texarkana 1998, no pet.); *Texas Dep't of Pub. Safety v. Duggin*, 962 S.W.2d 76, 79-80 (Tex. App.—Houston [1st Dist.] 1997, no pet.); *see also Floyd v. State*, 710 S.W.2d 807, 809-10 (Tex. App.—Fort Worth 1986, pet. dism'd) (appellant's statement that he

appellant would neither give consent to a breath test nor sign the form indicating his refusal. Dophied checked the box on the form that indicated that appellant refused to take the test and refused to sign the form. Dophied testified that after the procedures in the video room, suspects were ordinarily taken "up" to the central booking area where they were fingerprinted and then allowed to use the telephone. However, after completing the warning process and noting appellant's refusal to take the test, Dophied allowed appellant to try to use telephone by the video room as a convenience. That phone, however, did not work so appellant had to wait and follow the standard procedures.

From that offer, appellant concludes that Dophied confused him and made him think that he was allowed to call his attorney before deciding to take the test; therefore, he argues, he did not actually refuse to take the test and the evidence about the breath-test process should not have been admitted. Dophied's testimony made it clear that he informed appellant, both orally and through filling out the warning form showing both a refusal of the test and a refusal to sign, that appellant's behavior was the equivalent of refusing to take the breath test. Dophied simply allowed appellant to attempt to contact his attorney from a more convenient telephone after the refusal. We conclude that the record does not support appellant's contention that he was misinformed about his choices.

Appellant also contends that admitting into evidence the copy of the written DIC-24 warning form was error. The information contained in the form was already in evidence through the testimony of Dophied. Error, if any, was harmless. We overrule appellant's third point of error.

**Conclusion**

---

wished to consult with attorney before making decision to take breath test and refusal to sign warning form treated as refusal of breath test).

8

We have overruled appellant's three points of error. We affirm the trial court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   June 29, 2001

Do Not Publish