TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00455-CR






Gary Edward O'Bryan, Appellant



v.



The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF TOM GREEN COUNTY


NO. 99-02778L2, HONORABLE PENNY ANNE ROBERTS, JUDGE PRESIDING 






 After a jury trial, appellant Gary Edward O'Bryan was convicted for driving while
intoxicated. Tex. Penal Code Ann. § 49.04(b) (West Supp. 2001). Appellant elected to have the
court assess punishment, which was set at confinement for ninety days in the county jail and a
$500.00 fine, with the confinement probated for one year. In three points of error, appellant
challenges his conviction. We will affirm.


Factual and Procedural Background



 At approximately 12:30 a.m. on October 1, 1999, off-duty San Angelo police officer
Ed Smith was working as the night manager for an apartment complex. He received a page from a
tenant, Tracy O'Bryan, who screamed that her estranged husband Gary was trying to break into her
apartment. Smith went to the apartment, but no one was at the door. Tracy O'Bryan described the
vehicle her husband usually drove as a gold-colored Jeep. Smith went into the apartment parking
lot and saw a Jeep matching that description starting to leave. (1) Smith had already contacted his
backup officer, Steve Dophied, who was working the late-night shift, and radioed him again to ask
him to stop the jeep. Dophied stopped the vehicle as it was exiting the apartment complex and
entering the public road. Dophied testified that appellant attempted to swerve around him; the
officer then used his vehicle to block appellant's Jeep and gestured for appellant to return to the
parking area so the cars would not block the street. Dophied said that appellant got out of the car
without being asked and identified himself. Dophied smelled alcohol and thought that appellant's
movements were unsteady. Dophied began administering field sobriety tests. At that point, Smith
arrived and verified that appellant was the person about whom he had been called. Smith smelled
a strong odor of alcohol on appellant's breath and person; appellant's speech was slurred and his
eyes were bloodshot and glassy. When Smith tried to discuss the criminal trespass problem with
appellant, he was belligerent and kept telling the officers the names of other officers he knew. 
Appellant later told Dophied that Dophied must be a rookie because "only a rookie" would arrest
appellant in light of all of the officers he knew.

 Dophied testified that he administered a variety of field sobriety tests. He said
appellant smelled of alcohol, swayed while standing, displayed awkward and uncoordinated
movements, had slurred speech, and admitted to having four or five beers that evening. Dophied
testified about appellant's poor performance on the field sobriety tests. Dophied concluded that
appellant was intoxicated due to alcohol consumption, placed appellant in the police car, and took
him to jail. At the jail, Dophied read appellant the driver's license suspension warning contained
in standard form DIC-24. Appellant refused to give a breath specimen. He also refused to sign the
DIC-24 indicating his refusal.

 Tracy O'Byan testified that at the time she called police she had filed for divorce;
however, at the time of trial she had "dropped" the divorce proceeding and was living with appellant. 
They owned and managed a sports bar together. She said that appellant was not intoxicated on the
night in question, but she admitted she only saw him through a peephole and never opened the door
so she never smelled his breath. She said that appellant suffered from gout and had difficulty
standing; he took medication for the gout but she was unsure of the nature of the medication.

 Lonnie Bearden of the San Angelo Police Department also testified in appellant's
defense. Bearden said that appellant had gout, it gave him pain, and he had mobility difficulties. 
Bearden said that in his opinion these conditions might cause someone who was not intoxicated to
have difficulty with a field sobriety test. Although he said gout would not affect the horizontal gaze
nystagmus field sobriety test, he did not consider that test one hundred percent reliable. Bearden said
that he became a friend of appellant through their membership in the Fraternal Order of Eagles. 
Bearden also testified that in return for a few drinks, he served as a "kind of security" at appellant's
bar when he was off duty.

 Appellant brings three points of error: the evidence was legally insufficient to support
his conviction; the evidence was factually insufficient to support his conviction; and the trial court
erred in admitting evidence of appellant's refusal to provide a breath specimen.

Discussion



Sufficiency of the Evidence


 In his first two points of error, appellant contends that the evidence was legally and
factually insufficient to support his conviction; specifically, he claims that the State failed to
establish the element of intoxication beyond a reasonable doubt.

 When the court reviews the legal sufficiency of evidence, it does so in the light most
favorable to the verdict to determine whether a rational finder of fact could have found all the
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979);
Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999). 
If there is evidence that establishes guilt beyond a reasonable doubt and if the factfinder believes the
evidence, the reviewing court is not in a position to reverse the judgment on sufficiency of the
evidence grounds. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury as trier
of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of the witnesses,
and to determine the weight to be given any particular evidence. Id.

 When the court reviews the factual sufficiency of the evidence, it puts aside the prism
of the "light most favorable to the verdict." Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d
375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). The reviewing court considers all the
evidence in a neutral light and reverses if the verdict is so contrary to the overwhelming weight of
the evidence as to be unjust. Johnson, 23 S.W.3d at 7; Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997); Clewis, 922 S.W.2d at 134. The jury's verdict, however, should still be accorded
due deference so that the reviewing court does not, in effect, become the thirteenth juror. See
Clewis, 922 S.W.2d at 133. The appellate court does not interfere with the jury's resolution of
conflicts in the evidence or pass on the weight or credibility of testimony. Unless the record clearly
reveals that a different result was appropriate, an appellate court should defer to the jury's
determination concerning what weight to give contradictory testimonial evidence because the 
resolution of such conflicts often turns on an evaluation of credibility and demeanor by the jury. See
Johnson, 23 S.W.3d at 8-9.

 Appellant argues that the evidence is insufficient because he introduced
"uncontroverted evidence" that he suffered from a medical condition, gout, that impaired his
mobility and the State failed to prove that the appellant could have passed the field sobriety tests
even while in an unintoxicated condition. Appellant appears to be urging that the statutory definition
of intoxication (2) should be interpreted as "loss of his normal use of his faculties." See Fogle v. State,
988 S.W.2d 891, 893-94 (Tex. App.--Fort Worth 1999, pet. ref'd) (rejecting argument that State had
to prove defendant's normal use of his faculties; defendant argued that condition was due to organic
brain disorder, not alcohol) (citing Reagan v. State, 968 S.W.2d 571, 572 (Tex. App.--Texarkana
1998, pet. ref'd); Massie v. State, 744 S.W.2d 314, 316 (Tex. App.--Dallas 1988, pet. ref'd)). In
accord with Fogle and the cases cited therein, we reject appellant's argument that the State first had
to establish appellant's normal faculties and then establish whether he possessed normal use of his
own faculties at the time in question.

 The jury had before it testimony from appellant's wife and his friend Bearden that
appellant suffered from gout and his physical mobility was impaired. (3) Bearden said that in his
opinion appellant's gout would affect his performance on some of the field sobriety tests. The jury
also had before it the testimony of two police officers as to appellant's signs of intoxication. The
jury could have believed that appellant's behavior was explained by a medical condition; it was not
compelled to do so, however. The jury could have found the lack of any actual medical evidence
as to appellant's condition compelling. Further, the jury could rationally have decided that the wife's
and friend's personal relationships with appellant rendered their testimony less credible, a judgment
within their province. Moreno, 755 S.W.2d at 867. A rational trier of fact could have found all of
the elements of the offense beyond a reasonable doubt; the evidence is therefore legally sufficient. 
See Jackson, 443 U.S. at 319. We overrule appellant's first point of error.

 We have also reviewed all of the evidence in a neutral light. Appellant's basic
argument is that the jury should have believed his witnesses, rather than the State's. The record does
not show that any result other than the jury's determination of the weight to give to the contradictory
evidence was appropriate. See Johnson, 23 S.W.3d at 8. We conclude that the verdict was not so
contrary to the overwhelming evidence as to be unjust. See Johnson, 23 S.W.3d at 7; Clewis, 922
S.W.2d at 134. We overrule appellant's second point of error.

Evidence of Refusal of Breath Test

 In his third point of error, appellant contends that the trial court erred in admitting
evidence of his refusal to submit a breath sample. Although appellant acknowledges the
Transportation Code allows such an admission, (4) he urges that the manner in which the test was
presented to him at the county jail was confusing and violated his rights.

 Appellant contends that Dophied led him to believe that he was entitled to consult
with his attorney before deciding whether to submit a breath sample. He bases this contention on
Dophied's offer to use a telephone that turned out to be malfunctioning. The record as a whole does
not support appellant's inference from Dophied's offer, however.

 Dophied testified that after he transported appellant to jail, he took appellant to the
room used to videotape subjects while the standard DIC-24 form warnings were read and requests
for a breath sample made. Appellant kept insisting that he wanted to consult his attorney before
deciding whether to take or decline the breath test. Dophied testified that he told appellant several
times that appellant did not have that option; if he would not agree to take the test it was the
equivalent of a refusal. (5) Appellant kept arguing. When Dophied filled out the warning form,
appellant would neither give consent to a breath test nor sign the form indicating his refusal. 
Dophied checked the box on the form that indicated that appellant refused to take the test and refused
to sign the form. Dophied testified that after the procedures in the video room, suspects were
ordinarily taken "up" to the central booking area where they were fingerprinted and then allowed to
use the telephone. However, after completing the warning process and noting appellant's refusal to
take the test, Dophied allowed appellant to try to use telephone by the video room as a convenience. 
That phone, however, did not work so appellant had to wait and follow the standard procedures.

 From that offer, appellant concludes that Dophied confused him and made him think
that he was allowed to call his attorney before deciding to take the test; therefore, he argues, he did
not actually refuse to take the test and the evidence about the breath-test process should not have
been admitted. Dophied's testimony made it clear that he informed appellant, both orally and
through filling out the warning form showing both a refusal of the test and a refusal to sign, that
appellant's behavior was the equivalent of refusing to take the breath test. Dophied simply allowed
appellant to attempt to contact his attorney from a more convenient telephone after the refusal. We
conclude that the record does not support appellant's contention that he was misinformed about his
choices.

 Appellant also contends that admitting into evidence the copy of the written DIC-24
warning form was error. The information contained in the form was already in evidence through the
testimony of Dophied. Error, if any, was harmless. We overrule appellant's third point of error.

Conclusion



 We have overruled appellant's three points of error. We affirm the trial court's
judgment of conviction.



 ______________________________________ David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: June 29, 2001

Do Not Publish
1. Based on his testimony at trial, Smith was attempting to find appellant to deliver to him a
criminal trespass warning. See Tex. Penal Code Ann. § 30.05(a) (West Supp. 2001).
2. "'Intoxicated' means: (A) not having the normal use of mental or physical faculties by reason
of the introduction of alcohol . . . ." Tex. Penal Code Ann. § 49.01(2)(A) (West Supp. 2001).
3. We note that in Fogle, the defendant introduced testimony from a doctor that he suffered from
a brain disorder. 988 S.W.2d at 894. Appellant introduced no medical evidence that he suffered
from gout.
4. Tex. Transp. Code Ann. § 724.061 (West 1999).
5. No right to counsel attaches to the decision whether to take a breath test. See McCambridge
v. State, 712 S.W.2d 499, 506 (Tex. Crim. App. 1986) (decision to take or refuse breath test does
not implicate Fifth Amendment); Rodriguez v. State, 631 S.W.2d 515, 517 (Tex. Crim. App. 1982)
(taking of blood alcohol test not a testimonial communication protected by either the United States
or Texas Constitutions). A refusal to take a breath test does not mean that the suspect must explicitly
say, "I refuse." For example, drivers have "refused" a breath test for purposes of the implied consent
statute by refusing to provide two useable specimens. Kerr v. Texas Dep't of Pub. Safety, 973
S.W.2d 732, 736 (Tex. App.--Texarkana 1998, no pet.); Texas Dep't of Pub. Safety v. Duggin, 962
S.W.2d 76, 79-80 (Tex. App.--Houston [1st Dist.] 1997, no pet.); see also Floyd v. State, 710
S.W.2d 807, 809-10 (Tex. App.--Fort Worth 1986, pet. dism'd) (appellant's statement that he
wished to consult with attorney before making decision to take breath test and refusal to sign
warning form treated as refusal of breath test).



d as a whole does
not support appellant's inference from Dophied's offer, however.

 Dophied testified that after he transported appellant to jail, he took appellant to the
room used to videotape subjects while the standard DIC-24 form warnings were read and requests
for a breath sample made. Appellant kept insisting that he wanted to consult his attorney before
deciding whether to take or decline the breath test. Dophied testified that he told appellant several
times that appellant did not have that option; if he would not agree to take the test it was the
equivalent of a refusal. (5) Appellant kept arguing. When Dophied filled out the warning form,
appellant would neither give consent to a breath test nor sign the form indicating his refusal. 
Dophied checked the box on the form that indicated that appellant refused to take the test and refused
to sign the form. Dophied testified that after the procedures in the video room, suspects were
ordinarily taken "up" to the central booking area where they were fingerprinted and then allowed to
use the telephone. However, after completing the warning process and noting appellant's refusal to
take the test, Dophied allowed appellant to try to use telephone by the video room as a convenience. 
That phone, however, did not work so appellant had to wait and follow the standard procedures.

 From that offer, appellant concludes that Dophied confused him and made him think
that he was allowed to call his attorney before deciding to take the test; therefore, he argues, he did
not actually refuse to take the test and the evidence about the breath-test process should not have
been admitted. Dophied's testimony made it clear that he informed appellant, both orally and
through filling out the warning form showing both a refusal of the test and a refusal to sign, that
appellant's behavior was the equivalent of refusing to take the breath test. Dophied simply allowed
appellant to attempt to contact his attorney from a more convenient telephone after the refusal. We
conclude that the record does not support appellant's contention that he was misinformed about his
choices.

 Appellant also contends that admitting into evidence the copy of the written DIC-24
warning form was error. The information contained in the form was already in evidence through the
testimony of Dophied. Error, i