

## NUMBER 13-12-00154-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JOHN TYLER BICE,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

## On appeal from the County Court at Law No. 2
## of Victoria County, Texas.

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Rodriguez and Longoria
## Memorandum Opinion by Chief Justice Valdez[1]

By one issue, appellant, John Tyler Bice, appeals from his conviction for driving

while intoxicated, a class B misdemeanor offense. *See* TEX. PENAL CODE ANN. §

---

[1] The Honorable Rose Vela, former Justice of this Court, did not participate in deciding the case because her term of office expired on December 31, 2012. "In accordance with the appellate rules, she was replaced on panel by Justice Nora L. Longoria". *See* TEX. R. APP. P. 41.1(a).

49.04(a)–(b) (West Supp. 2011). Appellant argues that the trial court committed reversible error in denying his two motions to suppress. We affirm.

## I. BACKGROUND

The trial court held an evidentiary hearing on appellant's motions to suppress, during which the State called as its only witness Officer Jeff Strauss of the Victoria Police Department.[2] Strauss testified that, on April 7, 2011, he was conducting a night patrol when he observed a pickup truck traveling at an excessive rate of speed. His handheld radar verified that the truck was traveling 56 mph in a 40 mph zone. Strauss initiated a traffic stop and followed the truck as it pulled into the parking lot of Shooters Bar.

Following the stop, appellant exited the truck and started walking toward either the officer or the club; Strauss could not determine which. Strauss asked appellant to stop, identified himself as a police officer, and informed appellant of the reason for the stop. Strauss noticed an odor of alcohol emanating from appellant. Strauss also noticed that appellant's eyes were glassy and "a little bit bloodshot." According to Strauss, appellant's speech was "relatively good." At this point, Strauss was suspicious that appellant was possibly intoxicated.

Following field sobriety testing, Strauss arrested appellant. Next, Strauss requested that appellant provide a breath sample. According to Strauss, he made the request by reading the statutory warning language from a form known as the "DIC-24." On direct examination, Strauss testified that he read the DIC-24 "verbatim." Strauss testified that the second paragraph of the DIC-24 states as follows:

---

[2] Appellant did not testify.

2

If you refuse to give the specimen, that refusal may be admissible in the subsequent prosecution. Your license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 180 days, whether or not you are subsequently prosecuted for this offense.

According to Strauss, after appellant "initially refused" to provide a sample:

I told him we would sign the refusal form at the jail, but then I reiterated that I wanted to make clear that he understood it was an automatic 180 day suspension of his license, just to make sure that he was clear on the his refusal. I wanted to make sure that he understood the consequences.

After reviewing a video of the traffic stop, however, Strauss acknowledged that he deviated from the language of the DIC-24. Specifically, Strauss testified, "I didn't state the exact two sentences, but I stated that the refusal could result in a suspension for 180 days." Subsequently, Strauss testified that he told appellant that "his license would be suspended up to 180 days." According to Strauss, "[appellant] changed his mind and decided that he would render the sample." Thereafter, appellant provided a sample.

The following exchange took place on cross-examination by appellant's attorney:

Q     [A]fter you read him that warning, he refused, correct?

A     Yes, sir.

Q     He said no.

A     Yes, sir.

Q     Was there any doubt in your mind that he said the word no?

A     Not at all.

Q     You even confirmed that with him, didn't you?

A     Yes, sir.

Q     Now, you had not Mirandized him yet at this point, had you?

3

A    No, sir.

Q    He was in custody at that point in time, correct?

A    Yes, sir.

Q    And you felt obliged to ask him some questions, didn't you?

A    I only asked him – or I only reiterated that if he understood the penalty for not rendering the sample.

Q    And how did you do that?

A    I asked him if he understood by his refusal that his license would be suspended for 180 days.

Q    Okay. Now we watched that video and you said for up to 180 days. Do you recall that?

A    Oh yes, sir, my mistake, yes, sir.

Q    So you reiterated to him that his license would be suspended for up to 180 days, is that correct?

A    Yes, sir.

Q    Is that the law?

A    There is no law against making sure he understood.

Q    Okay. Well, I am talking about you stating the law[ is] that his license would be suspended for up to 180 days if he refused.

A    Yes, sir.

Q    Would you read that code again and maybe refresh your memory about the law?

A    I see – I see the point you are making, it is for not less than 180 days.

Q    So you didn't state the law properly, did you?

A    No, sir, not verbatim.

Q    Not verbatim or not at all?

4

A    I didn't tell him – I didn't tell him for not less than 180 days.  I said up to 180 days.

Q    You will agree that up to 180 days and not less than 180 days are two completely different spectrums, correct?

A    Yes, sir.

Q    So you misstated the direct statutory consequences arising from a refusal, is that correct?

A    A misstatement, I would . . . agree with that in hindsight.

On re-direct examination by the State, Strauss clarified that the first time he requested a sample from appellant he read the second paragraph of the DIC-24 "verbatim."

The trial court denied appellant's two motions to suppress without entering findings of fact or conclusions of law.  Thereafter, a jury trial was held, and appellant was found guilty of driving while intoxicated.  A final judgment was entered, and this appeal ensued.

## II. ANALYSIS

By one issue, appellant contends that the trial court erred in denying his motions to suppress.

### A.  Standard of Review

Whether the trial court properly denied a defendant's motion to suppress is reviewed under a bifurcated standard of review.  *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Scardino v. State*, 294 S.W.3d 401, 405 (Tex. App.—Corpus Christi 2009, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  *Wiede v. State*,

5

214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but apply a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24. We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We will overturn the ruling only if it is "outside the zone of reasonable disagreement." *Martinez*, 348 S.W.3d at 922.

## B. Applicable Law

Any person who is arrested for DWI is deemed to have given consent to submit to providing a specimen for a breath or blood test for the purpose of determining alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance. *See* TEX. TRANSP. CODE ANN. § 724.011(a) (West 2011).[3] However, a person retains an absolute right (subject to certain exceptions not relevant here) to refuse a test. *Id.* § 724.013 (West 2011). That refusal must be strictly honored. *McCambridge v. State*, 712 S.W.2d 499, 504 n.16 (Tex. Crim. App. 1986); *Turpin v. State*, 606 S.W.2d 907, 913-14 (Tex. Crim. App. 1980). The Texas Court of Criminal Appeals has explained this apparent inconsistency: "[C]onsent being implied by law, a

---

[3] *See McCambridge v. State*, 712 S.W.2d 499, 504 (Tex. Crim. App. 1986) ("[A] defendant, when faced with a decision whether to provide a breath or blood sample for chemical analysis of alcohol concentration[,] . . . may not avoid making a decision by invoking the protection of the Fifth Amendment privilege against self-incrimination or the prophylactic safeguards of *Miranda*.") (internal citation omitted).

driver may not legally refuse. A driver, however, can physically refuse to submit, and the implied consent law, recognizing that practical reality, forbids the use of physical force to compel submission." *Forte v. State*, 759 S.W.2d 128, 138 (Tex. Crim. App. 1988).

A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement. *Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011); *see Hall v. State*, 649 S.W.2d 627, 628 (Tex. Crim. App. 1983). The ultimate question is whether the person's "will has been overborne and his capacity for self-determination critically impaired" such that his consent to search must have been involuntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973); *Meekins*, 340 S.W.3d at 459. We "review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person." *Meekins*, 340 S.W.3d at 459. The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011).

Critical to a consent analysis is that the fact finder must consider the totality of the circumstances in order to determine whether consent was given voluntarily. *Meekins*, 340 S.W.3d at 459 (citing *Schneckloth*, 412 U.S. at 233); *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006). "The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent to search was voluntary or coerced." *Meekins*, 340 S.W.3d at 459. Accordingly, it follows that, because the fact finder must consider all of

7

the evidence presented, no one statement or action should automatically amount to coercion such that consent is involuntary—it must be considered in the totality. *See Fienen v. State*, No. PD-0119-12, 2012 Tex. Crim. App. LEXIS 1597 (Tex. Crim. App. Nov. 21, 2012).

## C. Discussion

Appellant contends that the incorrect statutory warning he was given rendered his consent to the breath test coerced and involuntary. *See* TEX. TRANSP. CODE ANN. § 724.015 (West Supp. 2011). On this basis, he argues that the results of the test should have been suppressed. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

Appellant relies on *Erdman v. State*, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993), *overruled*, *Fienen v. State*, No. PD-0119-12, 2012 Tex. Crim. App. LEXIS 1597 (Tex. Crim. App. Nov. 21, 2012) for the proposition that the incorrect statutory information conveyed by the officer automatically rendered his consent involuntary and coerced. The Court of Criminal Appeals has recently overruled *Erdman*, noting its "confused and flawed reasoning." *Fienen*, 2012 Tex. Crim. App. LEXIS 1597 at *15. The Court specifically noted that, based on *Erdman*, when extra-statutory warnings relate to the consequences of passing or failing the breath test, the courts of appeals have required that the defendant show a causal connection between the warning and the decision to submit to the test. *See id.* at *16. The Court further noted that "the rules

8

developed post-*Erdman* misapply the relevant burden of proof in addressing warnings regarding the consequences of passing or failing a breathalyzer test." *Id.* at *18. "It is well established that, when the issue is raised in a motion to suppress, the State must prove voluntary consent by clear and convincing evidence." *Id.* "Contrary to this notion, the courts of appeals have placed a burden on the defendant to show that he was coerced, specifically that there was a causal connection between the warning and his decision to submit to the test." *Id.* According to the Court of Criminal Appeals, "[t]his should not be so—once the defendant has raised the issue in his motion, the burden of proof is on the State, and it does not shift back to the defendant." *Id.*

Thus, the relevant question is whether, based on the totality of the circumstances, the State met its burden to prove that appellant's consent was voluntary. *Id.* at *19 ("[I]t is the State's burden to prove voluntary consent by clear and convincing evidence."). Here, the State's evidence included the testimony of the arresting officer, as well as a video and audio recording of the exchange between appellant and the officer. The uncontroverted evidence established that appellant was initially given the correct statutory warnings by the officer and subsequently refused consent. Thereafter, the officer advised appellant of the consequences of his refusal; however, in doing so, he misstated the statutory language by saying "up to 180 days" instead of "not less than 180 days." In other words, the officer understated the consequences of appellant's refusal. Appellant then consented to provide the breath sample.

Although appellant consented after he was incorrectly advised, there is no indication that the consent was induced or coerced by the officer understating the consequences of a refusal. *See Franco v. State*, 82 S.W.3d 425, 428 (Tex. App.—

9

Austin 2002, pet. ref'd) ("But Franco cannot plausibly argue that his decision to take the breath test was induced or coerced by the officer *understating* the consequences of a refusal.") (emphasis in original). Moreover, the officer's second request for a breath sample—on its own—did not amount to coercion, as appellant contends. *See White v. State*, 711 S.W.2d 106, 107 (Tex. App.—Houston [14th Dist.] 1986, no pet.) ("Appellant contends that the repeated demands of the police officer that he submit to a Breathalyzer test were somehow coercive in nature. We do not agree."). Although appellant changed his mind and agreed to provide a breath sample after the second request, that fact alone—without evidence that appellant was pressured physically or psychologically—is insufficient to invalidate consent that was otherwise voluntary. *See State v. Sells*, 798 S.W.2d 865, 867 (Tex. Crim. App. 1990) (per curiam) ("If a driver's consent is induced by an officer's misstatement of the consequences flowing from a refusal to take the test, the consent is not voluntary.").

Appellant argues that the outcome of this case should be determined by this Court's decision in *Tex. Dep't of Pub. Safety v. Patel*, No. 13-05-775-CV, 2006 Tex. App. LEXIS 9720 (Tex. App.—Corpus Christi Nov. 9, 2006, pet. denied) (mem. op.) (not designated for publication). *Patel* was a civil case involving a license revocation. *Id.* The defendant testified that he refused to provide a breath sample because the arresting trooper told him, after he had been given the required warnings, that if he hired an attorney, he did not have to provide a breath specimen. *Id.* at *9–10. We held that the administrative law judge was free to believe or disbelieve the defendant's contention that the arresting trooper's extra-statutory warnings affected his decision to refuse to provide a breath specimen. *Id.* at *11.

10

In this case, appellant did not testify, though we note he was not required to. Consequently, there is no testimony in the record regarding appellant's reasons for initially refusing to provide a sample or why he later changed his mind. Furthermore, unlike the defendant in *Patel*, appellant did not refuse to provide a sample, despite the fact that the officer understated the consequences of refusal. Thus, *Patel* is not controlling.

Accordingly, the trial court did not abuse its discretion in denying appellant's motions to suppress. Appellant's sole issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
10th day of January, 2013.

11