In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00182-CR**
_____

**DAVID WILLIAM LAMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law**
**Liberty County, Texas**
**Trial Cause No. 103696**

**MEMORANDUM OPINION**

A jury found David William Lamas guilty of driving while intoxicated with a

blood-alcohol level of 0.15 or more. *See* Tex. Penal Code Ann. § 49.04(a), (d) (West

Supp. 2018).[1] The trial court sentenced Lamas to one year of incarceration in the

Liberty County Jail, probated for two years, and assessed a $4,000 fine. Raising three

issues, Lamas appeals his conviction. We affirm the trial court's judgment.

---

[1] Throughout this Memorandum Opinion, we cite to the current versions of statutes if the subsequent amendments do not affect the outcome of this appeal.

1

## Background

Sergeant David Edwards with the Cleveland Police Department testified that he was working an "extra job" approved by the Department as parking lot security on March 26, 2016, at Whataburger in Cleveland. According to Edwards, his son visited him while he was working, and Edwards followed his son home when Edwards got off work around 2 a.m. Edwards testified that as he was following his son's vehicle, Edwards witnessed a silver car cross the center turn lane going the opposite direction and almost strike his son's vehicle "head on." Edwards agreed that, based on his training and experience, he believed the car that almost hit his son's car was traveling over the speed limit. According to Edwards, as soon as the vehicle passed him, he activated his patrol car's emergency equipment and initiated a traffic stop.

Edwards testified that he initiated contact with the driver, Lamas, and asked him to step out of the vehicle. Edwards testified that he could detect a strong odor of alcoholic beverage coming from inside Lamas's vehicle, and he noticed Lamas had slurred speech and "glassy and bloodshot eyes." According to Edwards, he called dispatch and requested an on-duty shift unit to take over the scene. He turned the investigation over to Officer Abram.

Officer James Abram with the Cleveland Police Department testified that when he arrived, he saw a silver Mercedes pulled over and Edwards's SUV behind the Mercedes. According to Officer Abram, Edwards told Abram what had happened. Abram then spoke with Lamas, the driver of the Mercedes. Abram testified that Lamas had bloodshot and watery eyes and Lamas "kind of swayed a little bit when he was standing and his speech was really, really slurred." Abram testified that after detecting the odor of alcohol coming from Lamas's breath and based on Lamas's demeanor and the way Lamas was standing and talking, Abram believed that Lamas "was under the influence." After administering field sobriety tests and after Lamas showed signs of intoxication during the tests, Officer Abram arrested Lamas for suspicion of driving while intoxicated and placed Lamas in his patrol car.

A copy of the DIC-24 that Officer Abram testified that he read to Lamas and provided in written form to Lamas was admitted into evidence. Abram testified that he provided the form to Lamas to read and that Officer Abram signed the bottom of the form. A video recording of Abram administering field sobriety tests to Lamas and arresting Lamas was admitted into evidence. The audio portion of the recording included the following exchange while Officer Abram read Lamas the form:

> Officer Abram: Hey Mr. Lamas, I've got to read something off to you real quick, okay sir? Alright. You are under arrest for an offense arising

out of acts alleged to have been committed while you were operating a motor vehicle in a public place, or a watercraft, while intoxicated. . . .

Lamas: Well, I want a re-test. Can't I get a re-test? Probably not, right? Alright, cool.

Officer Abram: Give me one sec. . . . or an offense under Section 106.041, Alcoholic Beverage Code. You will be asked to give a specimen of your breath and/or blood.

Lamas: What about the people who actually give me too much to drink at the bar that I just left? That's what I thought. That's what I thought.

Officer Abram: The specimen will be analyzed to determine the alcohol concentration or the presence of a controlled substance, drug, dangerous drug or other substance in your body. If you refuse to give the specimen, that refusal may be admissible in the, uh, in your prosecution.

Lamas: I ain't giving up no specimen. No. My lawyer told me don't give up no specimen. So why you trying to read that? . . .

Officer Abram: Your license, permit, privilege to operate a motor vehicle will be suspended or denied for not less than 180 days, . . . whether or not you are prosecuted for this offense. If you refuse to submit to taking a specimen, the officer may apply for a warrant authorizing a specimen be taken from you.

Lamas: Blood work and all that. I already know. It's ok. I already know. . . .

Officer Abram: . . . If you are 21 years of age or older and submit to the taking of a specimen and an analyzation of the specimen show that you have an alcohol concentration of .08 or more, your license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 90 days . . . whether or not you are prosecuted for this offense.

Lamas: . . . I didn't get no breathalyzer or not but I didn't do all that so, I don't care but yeah. I didn't do a breathalyzer so, whatever.

4

Officer Abram: If you were operating a motor vehicle and you refuse to give a specimen, a specimen that shows you have an alcohol concentration of .08 or more, you may be disqualified from driving a commercial motor vehicle for a period of not less than one year.

Lamas: I don't drive commercial vehicles. I'm the boss, dude. Are you not listening?

Officer Abram: You may request a hearing on the suspension or denial. This request must be received by the Texas Department of Public Safety at its headquarters in Austin, Texas, no later than 15 days after you receive or presumed to have received notice of suspension or denial. The request can be made by written demand, fax, or form prescribed by the Department. I certify that I have informed you both orally and in writing of the consequences of refusing to submit to the taking of a specimen or providing a specimen. I have provided you with a complete and true copy of this statutory warning. At this time . . . I am now requesting a specimen of your blood. Are you going to give me a specimen of your blood?

Lamas: With my handcuffs on?

Officer Abram: I'm going to have EMS come en route. . . . Will you give me a specimen of your blood?

Lamas: I've been drinking alcohol for years. This is going to be a bad. . . .

Officer Abram: Ok. And this will prove . . .

Lamas: It's going to be a bad thing.

Officer Abram: . . . And this will prove . . .

Lamas: When my wife died I've been drinking since then.

Officer Abram: Will you give me a specimen of your blood?

5

Lamas: I will.

Officer Abram: Okay. Alright. Hang tight, sir.

Officer Abram testified that he asked dispatch to contact Liberty County EMS to conduct the blood draw, and he transported Lamas to the Cleveland Police Department where the jail is located and where blood draws are conducted.

While Lamas was being transported to the Cleveland Police Department, the following exchange occurred:

Lamas: You're not listening . . .

Officer Abram: I am listening to you, sir.

Lamas: . . . It's pretty hot in here . . . can you roll the window down because I'm handcuffed . . . Can you do that? No? Probably not? . . . If you can't hear me, that's cool too. . . . whatever . . . I think I want to talk to my attorney before you take blood work and all that. That's what I want to do.

Officer Abram: Ok. So you don't want to give me blood. You're going to refuse?

Lamas: Now you're listening. Now you're listening. It's pretty hot, can you roll the window down?

Officer Abram: Are you going to refuse?

Lamas: Whatever. It's ok. Damn.

Officer Abram: I just . . . I need to know, sir.

Lamas: You're tripping, dude. . . . I'm not mad at you. I'm not mad at anybody. . . .

6

Once at the Cleveland Police Department, Officer Abram continued to question Lamas regarding whether he would consent to a blood draw:

Officer Abram: Ok. Are you going to give me blood? Yes or no.

Lamas: I want to talk to my attorney.

Officer Abram: I need to know that. Well you can't talk to your attorney right now. I need to know if you're going to give me blood. Yes or no.

Lamas: Nope.

Officer Abram: That's fine. And that's your right.

Lamas: [indecipherable]

Officer Abram: Ok. That is your right. I need to know . . .

Lamas: I take blood thinners.

Officer Abram: Ok. You told me yes on the scene. I'm asking you again one more time.

Lamas: Well, I thought about that after you said that and I take blood thinners and what do you call that blood pressure medicine and all that . . . [recording ends].

According to Officer Abram, there is a place for the defendant to sign the DIC-24 if he refuses to give a blood sample, but that Lamas did not sign the form because he agreed to provide a blood specimen. Abram testified that Lamas signed a consent form for the blood draw stating he was voluntarily giving a blood specimen. The blood draw consent form was also admitted into evidence.

7

Appellate Issues

In his first issue, Lamas argues the trial court erred in not suppressing the statements and evidence collected from Lamas after he invoked his right to counsel. In issues two and three, Lamas asserts his consent to a blood-draw was involuntary due to the police officer's misrepresentation of the law and over-reaching conduct.

Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford almost total deference to a trial judge's determination of historical facts, particularly when that determination is based on credibility or demeanor. *Fienen v. State*, 390 S.W.3d 328, 335 (Tex. Crim. App. 2012). The trial court is the sole trier of the facts and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The trial judge may believe or disbelieve all or part of the witness's testimony and we recognize that the trial judge is the one who had the opportunity to observe demeanor and appearance. *Id.* But questions of law and "mixed questions of law and fact" that do not depend on an evaluation of credibility and demeanor are reviewed de novo. *Fienen*, 390 S.W.3d at 335; *Guzman*, 955 S.W.2d at 89. When findings of fact are not entered, as here, we view the evidence in the light most favorable to the

8

trial court's ruling and assume the trial court made implicit findings of fact supporting that ruling. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). We will sustain the trial court's ruling if it finds reasonable support in the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447-48.

## Invocation of Right to Counsel

In his first issue, Lamas argues that the trial court erred by not suppressing the statements and evidence collected from Lamas after he invoked his right to counsel. According to Appellant, while he was transported to the jail, he invoked his right to counsel, "but the videotape recording show[s] that Abram continued asking Appellant questions seeking his consent to a blood draw."

Prior to trial, Lamas filed a motion to suppress arguing, among other things, that he "was not afforded meaningful access to counsel at a time when critical decisions involving his constitutional and statutory rights were being made[,]" and that "[a]ny oral, written or electronically recorded statements, allegedly made by [Lamas] were improper as they were [e]licited through illegal police interrogation after the Defendant had requested assistance of counsel." Lamas also argued that his statements "were made as a result of illegal custodial interrogation, without proper warning, . . . and absent any public safety exception." According to Lamas's motion,

9

his statements or acts "were made as a result of illegal custodial interrogation and made without a knowing, intelligent and affirmative waiver by the Defendant of his rights to remain silent and to counsel, *Miranda v. Arizona*, and were obtained in violation of Art. I, [Sec.] 10, Tex. Const.; and Art. 1.05, 15.17 and 38.22, Tex. Code Crim. Pro." During trial and outside the presence of the jury, Lamas's attorney re-urged his motion to suppress and asked that the audio portion of the recording be suppressed from the point at which Lamas stated his lawyer advised him not to consent to a blood draw. The trial court overruled the request and stated that the officer was "just reading the DIC form that's required." Lamas's attorney later re-urged the motion when Lamas stated on the video during transport that he wanted to talk to his lawyer, and Lamas's attorney argued that the remainder of the recording should be "muted" because Lamas had invoked his right to counsel. The trial court denied the motion to suppress the blood draw or any of the statements.

The trial judge could have reasonably concluded that the questions Officer Abram asked Lamas after Lamas first mentioned his lawyer or after his later request during transport were asked in an attempt to clarify whether Lamas would consent to a blood draw, and Lamas does not argue otherwise. "[T]he Fifth Amendment right to interrogation counsel is triggered by the *Miranda* warnings that police must give before beginning any custodial questioning. The Sixth Amendment right to trial

10

counsel is triggered by judicial arraignment or Article 15.17 magistration." *Pecina v. State*, 361 S.W.3d 68, 71 (Tex. Crim. App. 2012). "Among the rights about which the police must advise a suspect whom they have arrested is the right to have counsel present during any police-initiated interrogation." *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). Once a suspect has invoked his Fifth Amendment right to counsel, police interrogation must cease until counsel has been provided or the suspect himself reinitiates a dialogue. *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)).

In the context of an arrest for driving while intoxicated, a police officer's request for a suspect to take a blood-alcohol test is not an interrogation within the meaning of *Miranda*. *See Griffith v. State*, 55 S.W.3d 598, 603 (Tex. Crim. App. 2001) (citing *South Dakota v. Neville*, 459 U.S. 553, 564 n.15 (1983)). The United States Supreme Court in *Neville* explained the following:

> In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*. As we stated in *Rhode Island v. Innis*, 446 U.S. 291, 301 [] (1980), police words or actions "normally attendant to arrest and custody" do not constitute interrogation. The police inquiry here is highly regulated by state law[] and is presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography. Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection.

11

459 U.S. at 564 n.15 (internal footnotes omitted); *see also Lemmons v. State*, 75 S.W.3d 513, 522 (Tex. App.—San Antonio 2002, pet. ref'd) (a request for consent for a blood sample does not constitute interrogation under the Fifth Amendment, nor does it invoke a critical stage under the Sixth Amendment right to counsel); *Jones v. State*, 7 S.W.3d 172, 175 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (a request for consent to search a vehicle does not constitute interrogation under the Fifth Amendment).

We conclude that the officer's questioning of Lamas about whether Lamas would consent to a blood draw was "normally attendant to arrest and custody[,]" and did not constitute "interrogation[,]" and it did not violate the Fifth Amendment. *See Griffith*, 55 S.W.3d at 603 (citing *Innis*, 446 U.S. at 300-302; *McCambridge v. State*, 712 S.W.2d 499, 504 (Tex. Crim. App. 1996). We overrule Lamas's first issue.

### Voluntariness of Blood Draw

In issues two and three, Lamas argues that his consent to the blood draw was involuntary due to the police officer's misrepresentation of the law and over-reaching conduct. Specifically, Lamas argues that, although Lamas consented to the blood draw, Abram's testimony "shows that [Abram] subsequently altered those warnings in his communications with Appellant, telling Appellant that if he consented to a blood draw, his license would be suspended for only 90 days, versus

180 days[.]" According to Appellant, Abram failed to inform Appellant that he was entitled to a hearing before his license could be suspended and, therefore, Abram "essentially told Appellant that the license suspension was automatic and could not be contested." Lamas contends that "Abram's misstatement of the law caused Appellant to give involuntary consent to the blood draw[,]" and Abram's continued asking for consent after Lamas had refused constituted over-reaching, coercive acts that resulted in involuntary consent being given by Appellant.

Any person who is arrested for driving while intoxicated is deemed to have given consent to providing a specimen for a breath or blood test for the purpose of determining alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance. *Fienen*, 390 S.W.3d at 332. Nevertheless, subject to certain exceptions not applicable in this case, a person retains an absolute right to refuse a test. *Id.* at 332-33; *see also* Tex. Transp. Code Ann. § 724.013 (West 2011). A person's refusal must be strictly honored. *Fienen*, 390 S.W.3d at 333; *McCambridge*, 712 S.W.2d at 504 n.16.

Under State law, a person arrested for driving while intoxicated, if over the age of twenty-one, should be warned orally and in writing that refusal to submit to a breath test will result in the following consequences: (1) evidence of the refusal will be admissible against the person in court; and (2) the person's driver's license will

13

be suspended for not less than 180 days. *See* Tex. Transp. Code Ann. § 724.015(1)-(2) (West Supp. 2018). The purpose of section 724.015 is "to ensure that a person who refuses to give a requested specimen does so with a full understanding of the consequences." *See Rowland v. State*, 983 S.W.2d 58, 60 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (citations omitted). A person over the age of twenty-one should also be warned that if he submits to the test and an analysis of the specimen shows he had an alcohol concentration of a level specified by Chapter 49 of the Penal Code, the person's license to operate a motor vehicle will be automatically suspended for not less than ninety days, whether or not the person is subsequently prosecuted as a result of the arrest. *See* Tex. Transp. Code Ann. § 724.015(4).

In the present case, Officer Abram testified that he read Lamas the required statutory warnings, and the trial court watched the recording and heard Abram read the DIC-24 form with the required statutory warnings. Lamas cites to testimony by Abram in arguing that Abram "subsequently altered those warnings in his communications with Appellant, telling Appellant that if he consented to a blood draw, his license would be suspended for only 90 days, versus 180 days[.]" Lamas appears to be arguing that the time periods referenced in Abram's testimony inaccurately state the time periods under section 724.015 or are different than the time periods specified in the statute or the written DIC-24 form. Lamas also

14

complains that Abram "misstated the law" by omitting in the subsequent discussion with Lamas that Lamas would have a right to a hearing on the suspension.

Abram explained that when he read the form to Lamas approximately twenty to thirty minutes earlier to his subsequent conversation he also read the portion of the DIC-24 form to Lamas that advised Lamas as to his right to a hearing on the suspension. The time periods on the DIC-24 form Abrams gave to Lamas were the same time periods read off the form by Abram to Lamas, and those warnings track the language of section 724.015. *See* Tex. Transp. Code Ann. § 724.015. The trial court heard the recording wherein Abram read the statutorily-required warnings to Lamas and heard Abram testify that he reiterated some of the warnings again twenty or thirty minutes later. On this record, the trial court could have reasonably determined that Abram gave Lamas the statutorily-required warnings and did not "misstate the law."

As to Lamas's contention that Abram's actions in asking Lamas for consent even after Lamas had refused were "overreaching, coercive acts[,]" the record shows that Lamas initially consented, but then stated he wanted to talk to his lawyer. Lamas was vacillating on whether he consented to the blood draw. We disagree with Lamas's characterization of the record on appeal that "the circumstances appearing

in the record show that Appellant's consent to the blood draw was not made freely or with a correct understanding of the statutory consequences of refusal."

In reaching its decision on the motion to suppress, a trial court, as the fact finder, must consider the totality of the circumstances in determining whether consent was given voluntarily. *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973)); *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006). "The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent search was voluntary or coerced." *Meekins*, 340 S.W.3d at 459. "Accordingly, it follows that, because the fact finder must consider all the evidence presented, no one statement or action should automatically amount to coercion such that consent is involuntary—it must be considered in the totality." *Fienen*, 390 S.W.3d at 333. The trial court could have reasonably concluded from the record that Abram's repeated questioning of Lamas regarding whether Lamas would consent to a blood draw was not overreaching or coercive. Viewing the totality of the circumstances in a light that is most favorable to the trial court's ruling, we conclude the trial court did not abuse its discretion in finding that Appellant made a conscious and voluntary decision to consent to the blood draw. *See id.* at 335; *Meekins*, 340 S.W.3d at 458-60. Issues two and three are overruled.

Having overruled all of Appellant's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 5, 2018
Opinion Delivered November 14, 2018
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.