**Opinion issued December 11, 2025**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NOS. 01-23-00959-CR, 01-23-00960-CR, 01-23-00961-CR

_____

**JOSE FLORENTINO ORTIZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case Nos. 20-DCR-092408C, 20-DCR-093160A, 20-DCR-093162A**

**MEMORANDUM OPINION**

Jose Florentino Ortiz was charged in three different case numbers with sexual offenses against children. The cases were consolidated for jury trial. In the first case, he was found guilty of continuous sexual abuse of a child. *See* TEX.

PENAL CODE § 21.02(b). In the remaining two cases, he was found guilty of aggravated sexual assault of a child. *Id.* § 22.021(a).

On appeal, he argues that the trial court erred by denying his motion to sever. He also argues that the trial court erred by denying his motion to suppress his statement made after arrest. We affirm.

## Background

After an investigation into sexual abuse allegations by his nieces, Ortiz was arrested in 2024 in Fort Bend County. A few days before the arrest, a Fort Bend County sheriff coordinated a one-party-consent call with Mary and Susie Oles and their father.[1] Ortiz is the paternal uncle of Mary and Susie. During the call, the family confronted Ortiz. Ortiz acknowledged he had sexually abused Mary and Susie and apologized for it. Following his arrest, Ortiz confessed to multiple acts of sexual abuse against Mary and Susie.

When Nancy Chavez's mother heard that Ortiz was in jail charged with sexually abusing Mary and Susie, she asked Nancy, who is also Ortiz's niece, if anything happened when she was a child around Ortiz. Nancy told her mother that Ortiz had sexual intercourse with her.

Ortiz was indicted for continuous sexual abuse of a child, alleging that he committed two or more acts of sexual abuse against Susie Oles and Nancy Chavez,

---

[1]     We refer to the three complainants by the same pseudonyms used during trial.

2

who were younger than fourteen at the time. The remaining two indictments were for aggravated sexual assault of a child, alleging that Ortiz penetrated Mary Oles mouth with his sexual organ in 1995 and penetrated her sexual organ with his finger in 1996. Both allegations occurred when Mary was younger than 14 years old.

The State consolidated the cases into a single criminal action. Ortiz moved to sever the cases, and the trial court denied his motion. Ortiz also moved to suppress his post-arrest statements to authorities, asserting that the statements were obtained in violation of his constitutional right to an attorney. The trial court denied the motion to suppress.

Ortiz proceeded to a jury trial. Among other witnesses, Nancy, Susie, Mary, and Ortiz testified. The testimony included that Ortiz sexually abused the three complainants for many years when they visited their grandparents' house. Mary testified that Ortiz lived with her paternal grandparents. She testified that Ortiz began abusing her when she was 5 years old. On multiple occasions over the course of several years, he put his penis in her mouth and his fingers in her vagina. He began having vaginal intercourse with her when she was about 13. When she was about 15, she started avoiding family gatherings to hide from Ortiz. She did not tell anyone about the abuse until years later.

Susie testified that Ortiz touched her vagina with his hands and showed her photographs of his penis from the time she was 7 until the time she was 12. Susie testified that the abuse happened at her grandparents' house or while she was a passenger in Ortiz's truck.

Once she heard that Susie and Mary had told their parents about years of sexual abuse, Nancy's mother asked her daughter if she had experienced abuse. At that time, Nancy disclosed that she too had been abused by Ortiz when visiting her grandparents' house. Nancy testified that she remembered waking up with Ortiz's penis inside her vagina. She also described Ortiz putting his hand on her bottom inside her underwear while they were riding in a truck. She testified that the abuse happened several times beginning when she was 5 or 6 years old until she was about 11.

The jury found Ortiz guilty as charged and assessed punishment at 25 years' imprisonment for continuous sexual abuse of a child and 16 years' imprisonment for each case of aggravated sexual assault of a child. The trial court ordered the sentences to run consecutively. Ortiz appealed.

On appeal, Ortiz argues that the trial court abused its discretion by denying his motion to sever and by denying his motion to suppress his post-arrest statements. We affirm.

**Severance**

Ortiz contends that his convictions should be reversed because the trial court erred by denying his motion to sever. He argues that the three cases against him do not arise from the same criminal episode and that the trial court erred in finding that he would not be unfairly prejudiced by joinder. We disagree.

## A. Standard of Review and Applicable Law

"A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." Tex. Penal Code § 3.02(a). A "'criminal episode' means, in relevant part, the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person" when "the offenses are the repeated commission of the same or similar offenses." *Id.* § 3.01; *see Waddell v. State*, 456 S.W.3d 366, 370 (Tex. App.—Corpus Christi 2015, no pet.) (explaining to qualify as same criminal episode, "it need only be shown that the offenses for which a defendant was charged and convicted were the repeated commission of the *same or similar offense*" and does not require proof that offenses were committed in same or similar fashion).

There is a two-tiered statutory framework for severance. *Diez v. State*, 693 S.W.3d 899, 919 (Tex. App.—Austin 2024, pet. ref'd). Generally, severance is granted to the defendant as a matter of right. *See* Tex. Penal Code § 3.04(a);

*Hodge v. State*, 500 S.W.3d 612, 621 (Tex. App.—Austin 2016, no pet.); *see also*

*Llamas v. State*, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000) (describing

defendant's "absolute discretion" to decide whether to request "mandatory

severance"). In the second tier, if a defendant is being prosecuted for certain

statutorily listed offenses, including aggravated sexual assault of a child and

continuous sexual assault of a child, then the defendant may receive a severance

only after showing that the defendant "would be unfairly prejudiced by a joinder of

offenses" in the same trial. TEX. PENAL CODE § 3.04(c); *see also id.* § 3.03(b)

(listing offenses for which automatic right to severance does not apply).

Appellate courts review a trial court's decision to grant or deny a request to

sever for an abuse of discretion. *Salazar v. State*, 127 S.W.3d 355, 365 (Tex.

App.—Houston [14th Dist.] 2004, pet. ref'd). A trial court's ruling will only be

deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of

reasonable disagreement or is arbitrary or unreasonable. *State v. Mechler*, 153

S.W.3d 435, 439 (Tex. Crim. App. 2005); *Lopez v. State*, 86 S.W.3d 228, 230

(Tex. Crim. App. 2002).

**B.      The trial court did not err in determining that the charges against Ortiz arose from the same criminal episode.**

Ortiz argues that the trial court erred in denying his motion to sever because

the cases against Mary were not part of the same pattern of behavior as the cases

charging continuous sexual abuse against Susie and Nancy. He also argues that the offenses against Mary occurred years before the offenses against Susie and Nancy.

The trial court did not abuse its discretion by finding that the three cases against Ortiz comprised one criminal episode. The cases involving Ortiz's niece Mary are both for aggravated sexual assault when Mary was younger than fourteen. The differences in the two cases included the date of the offense and the way the offense was committed. Ortiz was indicted for penetrating Mary's sexual organ with his finger in 1996 and for penetrating Mary's mouth with his sexual organ a year later. The third case involved allegations of continuous sexual abuse of two more nieces, Susie and Nancy. Susie is Mary's sister.

The offenses were similar in nature. All three indictments involved Ortiz sexually assaulting his nieces in different ways, including putting his sexual organ in Mary's mouth, touching Susie's vagina with his fingers, and having sexual intercourse with Nancy. The complainants alleged that the abuse happened repeatedly over many years beginning when they were in elementary school. All three alleged that the abuse happened at their grandparents' house, where Ortiz lived. The trial court could have reasonably found that because all three offenses entailed sexual assault, they are similar offenses. *See Diaz v. State*, 125 S.W.3d 739, 742 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding indecency

with a child and sexual assaults against multiple children over course of year were part of criminal episode because offenses were similar).

Ortiz argues that the trial court erred in holding that the offenses comprised a criminal episode because the offenses against Mary happened in years prior to the offenses against Susie and Nancy. But Section 3.01(2) of the Penal Code does not impose a time differential between the commission of the same or similar offenses. *Guidry v. State*, 909 S.W.2d 584, 585 (Tex. App.—Corpus Christi-Edinburg 1995, pet. ref'd); *see also Corwin v. State*, 870 S.W.2d 23, 27–29 (Tex. Crim. App. 1993) ("In abducting, raping, and killing or attempting to kill five women in more or less the same way over the course of some thirteen years, interrupted only by a lengthy sojourn in the penitentiary, appellant can reasonably be said to have engaged in 'a regular mode or pattern of . . . behavior.'").

The trial court could have reasonably found that the indictments comprised a criminal episode of repeating the same or similar offense against three of Ortiz's nieces over a continuous period.

## C.   Ortiz did not meet his burden to show that he would be unfairly prejudiced by the consolidation of the cases.

Neither party disputes that based on the offenses charged, Ortiz's right to severance depends on an unfair prejudice showing. TEX. PENAL CODE § 3.04(c). "Unfair prejudice" means something more than the types of prejudice that a defendant "would automatically face in any case in which felony counts are

joined." *See Hodge*, 500 S.W.3d at 622 (quoting *Riemer v. State*, Nos. 02-12-00613-CR, 02-12-00614-CR, 02-12-00615-CR, 2013 WL 6565057, at \*4 (Tex. App.—Fort Worth Dec. 12, 2013, no pet.) (per curiam) (mem. op., not designated for publication)). The types of prejudice inherent in any trial of joined counts include "that the jury may convict a 'bad man' who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds" and that "the jury may infer that because he committed some of the alleged crimes, he probably committed all of them." *Llamas*, 12 S.W.3d at 471.

In the trial court, Ortiz's argument rests only on the types of prejudice that are inherent in any case in which felony counts are joined. *See Hodge*, 500 S.W.3d at 622. Ortiz argued that he would be unfairly prejudiced by consolidation because the jury would struggle to distinguish the evidence supporting each case since the cases involved different victims, dates, and facts. He alleged that consolidation increased the likelihood that the jury would convict him based on poor character rather than based on the evidence in each individual case. These concerns are squarely within the realm of what the defendant would face in any felony joinder and do not rise to the level of "unfair prejudice." *Id.*

The trial court did not abuse its discretion in denying Ortiz's motion to sever. We overrule his first issue.

**Motion to Suppress**

In his second issue, Ortiz asserts that the trial court erred by denying his motion to suppress his post-arrest statements made to a detective. Specifically, he argues that he did not knowingly or voluntarily waive his right to counsel. We disagree.

## A. Standard of Review and Applicable Law

We review a trial court's ruling on a motion to suppress evidence using a bifurcated standard of review. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021); *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012). "We afford almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor. . . ." *Pecina*, 361 S.W.3d at 79. "[W]e review de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor." *Id.* When, as here, the trial court made no findings of fact, we view the evidence in the light most favorable to the trial court's ruling and presume the trial court made implicit findings of fact that support its ruling if those findings are supported by the record. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will affirm the trial court's ruling on a motion to suppress if it is supported by the record and "correct under any applicable theory of law." *Wells v. State*, 611 S.W.3d 396, 406 (Tex. Crim. App. 2020) (internal quotation omitted).

"The Fifth Amendment prohibits the government from compelling a criminal suspect to bear witness against himself." *Pecina*, 361 S.W.3d at 74–75 (citing U.S. CONST. amend. V). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defen[s]e." U.S. CONST. amend. VI; *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) ("The Sixth Amendment right to counsel attaches when the prosecution has commenced."). *Miranda* warnings and article 38.22 of the Texas Code of Criminal Procedure "guard against abridgement of the suspect's [constitutional] rights." *McCambridge v. State*, 712 S.W.2d 499, 506 (Tex. Crim. App. 1986) (en banc); *see Miranda v. Arizona*, 384 U.S. 436, 445 (1966); TEX. CODE CRIM. PROC. art. 38.22. Therefore, before a defendant's custodial "statement [may] be introduced into evidence against him at trial," it must be shown that a defendant "voluntarily and intelligently waive[d] his *Miranda* rights, including the right to have an attorney present during questioning." *Pecina*, 361 S.W.3d at 75; *see also* TEX. CODE CRIM. PROC. art. 38.22 (governing when accused's written or oral statements made during custodial interrogation may be admissible in criminal proceedings).

A defendant may ask to speak with counsel at any time prior to or during a custodial interrogation, and the invocation requires law enforcement to cease all questioning "until counsel has been provided or the defendant initiates further

communication with the police." *Hartwell v. State*, 476 S.W.3d 523, 530 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)). However, a defendant's request for counsel must be unambiguous and articulated with sufficient clarity so that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Pecina*, 361 S.W.3d at 79 (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)). "[N]ot every mention of a lawyer will suffice to invoke the Fifth Amendment right to counsel during questioning." *State v. Negrete*, 630 S.W.3d 460, 466 (Tex. App.—Houston [1st Dist.] 2021, pet. ref'd). An ambiguous or equivocal statement about counsel does not require law enforcement officers to halt their interrogation or seek clarification. *Id.*

When reviewing an alleged invocation for the right to counsel, we look at the statement itself and the totality of the circumstances surrounding the statement to determine whether the defendant's statement constitutes an actual invocation of the right to counsel. *Id.* We determine whether the defendant articulated his desire for assistance of counsel sufficiently clearly that a reasonable law enforcement officer under the circumstances would understand the statement to be a request for an attorney. *Id.* While no "magical words" are required, at a minimum, a defendant must "express a definite desire to speak to someone, and [for] that person [to] be

an attorney." *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995) (internal quotations omitted).

## B.     Relevant Facts

The court held a hearing on Ortiz's motion to suppress his custodial statements. During the hearing, the court viewed a video of Ortiz's interview.

The detective who interviewed Ortiz testified at the hearing that he had investigated Ortiz concerning sexual assault accusations made by Ortiz's family members. The detective arranged a one-party consent call between Ortiz and Mary Oles, Susie Oles, and their father, Ortiz's brother. The detective testified that Ortiz spoke mostly in English during the phone call. Based on Ortiz's admissions during that phone call, the detective obtained an arrest warrant for Oritz.

Ortiz was arrested two days later and brought in for interrogation. The detective read Ortiz the *Miranda* warnings. The detective testified that he paused after each warning, and Ortiz indicated that he understood each one. Ortiz was also presented with a card with written *Miranda* warnings in English and Spanish, and he signed, indicating he understood each of his rights. During the interrogation, the detective told Ortiz that it was his understanding that Ortiz had issues with some family members. The detective told Ortiz that he knew the family members had mentioned that they were going to talk to law enforcement about it. Ortiz responded that, "The reason why I didn't call [the detective] is because I wanted to

hear back from a lawyer so I spoke to a lawyer . . . And I think he contact[ed] you?" When Ortiz said he did not have the money to hire the attorney, and suggested he had not told the attorney that, the detective responded, "But if you can't afford an attorney, you know, you have the right to speak to one. That's part of what I've already read to you." Ortiz responded that he understood. Ortiz then continued with the interview, discussing sexual abuse of Mary and Susie Oles.

The detective testified that he had spoken with attorney Adam Capetillo before Ortiz was arrested regarding Ortiz. He was unable to give the attorney any details at that time.

Attorney Adam Capetillo testified that before arrested, Ortiz called his office inquiring about hiring him. Capetillo advised Ortiz not to talk to anyone, especially the police. During the phone call, Capetillo told Ortiz his minimum retainer fee. Ortiz told Capetillo that he needed to get his finances in order. Ortiz told Capetillo that he was working on getting half of the money and would contact him the next day. Capetillo testified that he called the investigating detective the same day to inquire about the allegations. Capetillo testified that the detective would not give him details of the case. At some point after Ortiz was arrested, Ortiz's family retained Capetillo, and Capetillo sent a letter of representation to the detective.

Ortiz testified that he spoke with Capetillo days before he was arrested, explaining to Capetillo that he was "accused of something of a sexual nature."

Ortiz testified that Capetillo told him his fee would be $25,000 and that Ortiz could give him half. Ortiz told Capetillo that he was going to try to get the money because he did not have it. Ortiz testified that he gave Capetillo authority to contact the investigating detective, and that at no point did he tell Capetillo he did not wish to hire him.

## C. Analysis

Ortiz asserts that his Fifth Amendment rights were violated because even if he knowingly and voluntarily waived his right to counsel during the interrogation, his unilateral waiver is invalid because he had retained counsel days before the custodial interrogation. Ortiz argues that Capetillo's phone call with the detective put law enforcement on notice that Ortiz was represented. According to Ortiz, when Ortiz told the detective that he had spoken to a lawyer, Ortiz was invoking his right to an attorney and the detective should have halted the interview or at minimum sought clarification as to whether Ortiz was represented by an attorney.

The State responds that Ortiz did not clearly and unequivocally invoke his right to an attorney. We agree with the State. Nothing in the record indicates that Ortiz clearly articulated his desire to have counsel present such that a reasonable police officer would have understood the statement to be a request for an attorney. *See Bernard v. State*, No. 01-18-00876-CR, 2019 WL 6869328, at *4 (Tex. App.—Houston [1st Dist.] Dec. 17, 2019, pet. ref'd) (mem. op., not designated for

15

publication) ("The use of the word 'attorney' or 'lawyer' does not, in and of itself, invoke the right to counsel.") (quoting *Dinkins*, 894 S.W.2d at 351); *State v. Norris*, 541 S.W.3d 862, 865–67 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (concluding statements such as "Well, give me a lawyer or something 'cause I'm not sure I have," and "I just want to make a phone call and call my sister and see if she could . . . go get me a lawyer or something," were not unambiguous and unequivocal requests for counsel). Ortiz stating that he thought the detective had talked to an attorney Ortiz had contacted is not an unequivocal request to speak with an attorney.

To the extent that Ortiz argues that Capetillo had invoked his Fifth Amendment rights on his behalf, we disagree. Only under certain circumstances may an attorney speak for his client in invoking Fifth Amendment protections, and those circumstances are not present here. *See Janecka v. State*, 739 S.W.2d 813, 828 (Tex. Crim. App. 1987). An attorney may invoke the Fifth Amendment right on behalf of his client, but he must do so when an attorney-client relationship exists, in the presence of the accused or after conferring with the accused, the accused must do nothing to contradict the attorney, and the officer must agree not to question the accused in the attorney's absence. *Id.* The record does not clearly indicate that an attorney-client relationship exists, the attorney did not invoke the right in the presence of or after conferring with Ortiz, and there is no evidence

16

establishing that law enforcement agreed not to question Ortiz in the attorney's absence. *See id.* The trial court did not err in denying the motion to suppress because the interrogation did not violate Ortiz's Fifth Amendment rights.

Finally, to the extent Ortiz argues that his Sixth Amendment rights were violated during the custodial interrogation, we agree with the State that the right had not yet attached. "The Sixth Amendment right to trial counsel is triggered by judicial arraignment or Article 15.17. magistration." *Pecina*, 361 S.W.3d at 71. Ortiz's Sixth Amendment rights had not been triggered at the time of his interrogation because he had yet to be arraigned or magistrated.

The trial court did not err in denying Ortiz's motion to suppress his custodial statements. We overrule his second issue.

## Conclusion

We affirm the trial court's judgment.

Susanna Dokupil
Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).